**The STATE of Ohio, Appellee,**

v.

**BUSH, Appellant.**

[Cite as *State v. Bush* (1997), 119 Ohio App.3d 146.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 96–CA–42.

Decided April 11, 1997.

*David E. Smith,* Clark County Assistant Prosecuting Attorney, for appellee.

*James D. Marshall,* Clark County Assistant Public Defender, for appellant.

Frederick N. Young, Presiding Judge.

Danny R. Bush appeals his conviction of robbery.

Bush's robbery conviction is based upon the following facts. At approximately 2:00 a.m. on December 4, 1995, Bush entered the Dairy Mart on West Main Street in Springfield. The cashier—a fifty-five-year-old woman of slight build—observed Bush taking beer from a cooler and placing it into the pockets of his army jacket. The cashier testified that she politely told Bush to put the beer back and informed him that she could not sell beer until 5:30 a.m. Bush ignored the cashier. When Bush finished placing the beer into his pockets, he walked toward the front of the store. As he was walking, the cashier again told him to put the beer back and stated that she could not sell beer until 5:30 a.m. The cashier testified that Bush defied her request and said, "I didn't take anything,"

and then walked out the door. The cashier explained that she did not pursue Bush because, at that moment, she was busy with five or six other customers.

About a half hour later, around 2:30 a.m., Bush entered the store once again. The cashier at that time was sitting on a milk crate behind the service counter. Bush walked behind the service counter, where only employees are permitted, and approached the cashier. Bush asked the cashier whether she was alone, and the cashier responded that she was alone. Bush then asked her if she was sure, and the cashier assured him that she was alone. The cashier testified that during this exchange she could smell alcohol on Bush's breath.

After Bush received the cashier's assurance that she was alone, Bush took hold of the cashier's arm and walked her to the cash register, which was located approximately ten feet away. According to the cashier's testimony, Bush did not squeeze her arm or push or pull her to the cash register. Once in front of the cash register, Bush asked the cashier in a normal tone of voice to open the drawer. The cashier asked Bush what he had said, and Bush again told her in a normal tone of voice to open the drawer. When the cashier opened the drawer, Bush began placing the money and food stamps into a bag. Bush then asked the cashier to get him a brown paper bag in which to put the change from the drawer, and the cashier complied. Afterward, Bush took some lottery tickets, and then walked around to the other side of the counter and proceeded toward the door. Bush stopped before reaching the door, however, and said that he had one more thing to do. Upon hearing this, the cashier exclaimed, "Oh, God," or "Oh, Lord," and asked "What?" Without answering the cashier, Bush went to the back of the store and grabbed part of a six-pack of beer. Thereafter, Bush walked out the door. Once he was out of the store, the cashier locked the door and called the police.

The police found Bush, who matched the description given by the cashier, running away from the Dairy Mart. When the police apprehended Bush, he was carrying, among other things, a large amount of cash and food stamps in a brown paper bag, lottery tickets, and portion of a six-pack of beer with a Dairy Mart tag on it. The police took Bush back to the Dairy Mart and the cashier identified Bush as the person who had stolen those items.

On December 12, 1995, the grand jury indicted Bush for felony theft under R.C. 2913.02, a fourth-degree felony, based upon the allegations that Bush stole beer from the Dairy Mart at 2:00 a.m. The grand jury also indicted Bush with robbery under R.C. 2911.02, a second-degree aggravated felony, based upon the events that occurred at 2:30 a.m. Prior to trial, the court dismissed the felony theft charge upon the motion of the state. The robbery charge was tried before a jury on March 28, 1996. The jury was instructed on both robbery and the lesser included offense of theft. After deliberating, the jury returned a verdict finding

Bush guilty of robbery. On April 18, 1996, the trial court sentenced Bush to a minimum of five years and a maximum of fifteen years in the state penitentiary. On May 9, 1996, Bush filed this timely appeal.

In his first assignment of error, Bush argues:

"The court erred to appellant's prejudice by admitting into evidence over appellant's objection testimony regarding other crimes, wrongs or acts."

Bush was charged with felony theft based upon the events that occurred when he first entered the Dairy Mart at 2:00 in the morning. This charge was dismissed by the trial court upon the motion of the state prior to trial. The remaining robbery charge against Bush was based upon the events that occurred the second time Bush entered the Dairy Mart at around 2:30 in the morning. Although the felony theft charges against Bush had been dismissed, the state was permitted over the objection of the defense to elicit testimony in Bush's robbery trial regarding the events that occurred at 2:00 a.m. Bush argues that the trial court erred in admitting the evidence of this alleged earlier crime because evidence of previous crimes may generally not be admitted under Evid.R. 404 and R.C. 2945.59 unless it is offered to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or guilt of the offense charged. Bush contends that the evidence was not offered to prove any of these exceptions, and, therefore, the trial court should have excluded the evidence.

The state argues that the evidence of the earlier crime was properly admitted because it was offered to prove the last of the aforementioned permitted uses of such evidence, that is, Bush's guilt of the offense of robbery.

R.C. 2911.02 sets forth the following definition of robbery:

"(A) No person, in attempting or committing a theft offense, as defined in Section 2813.01 of the Revised Code, or in fleeing immediately after such attempt or offense, shall use or threaten the immediate use of force against another."

The state argues, in particular, that the evidence of the earlier events was offered to prove the force element of the offense of robbery, in other words, that Bush used or threatened the immediate use of force. The state contends that the evidence of Bush's flagrant and brazen defiance of the cashier's command to put the beer back when he entered the Dairy Mart at 2:00 a.m. tended to make it more probable that Bush's actions and demeanor during the second encounter at around 2:30 a.m. conveyed a threat of force.

We agree with the state that the cashier's testimony as to the earlier events was permissible because it was probative of Bush's guilt of the offense of robbery. In order to find Bush guilty of robbery instead of the lesser included offense of theft by threat, the state had to prove that Bush used or threatened

the immediate use of force against the cashier. The test for force or threat of force is objective and relies on the totality of the circumstances. *State v. Habtemariam* (1995), 103 Ohio App.3d 425, 659 N.E.2d 850. R.C. 2901.01(A) defines "force or threat of force" as any violence, compulsion, or constraint physically exerted or threatened to be exerted by any means upon a person or thing. This court has further limited this definition of force, however, by ruling that the necessary violence, compulsion, constraint or threat thereof must be of a type that exacts or potentially exacts harm to a person. *State v. Furlow* (1992), 80 Ohio App.3d 146, 608 N.E.2d 1112. Furthermore, the Supreme Court held in *State v. Davis* (1983), 6 Ohio St.3d 91, 6 OBR 131, 451 N.E.2d 772, that the threat of violence, compulsion, or constraint need not be direct and explicit; rather, it can be implied from the perpetrator's demeanor and tone of voice.

In the case *sub judice,* the evidence as to Bush's actions and demeanor during his first encounter with the cashier was relevant to the threat-of-force element because the evidence could be viewed as tending to make it more probable that Bush's actions and demeanor during the second encounter conveyed a threat of force. Specifically, we believe that Bush's flagrant defiance of the cashier's command that he return the beer during the first encounter demonstrated a single-mindedness in stealing and total disregard for the cashier's authority, which could be viewed as making it more probable that Bush's demeanor and behavior conveyed a threat of force during the second encounter. We do note that our decision that this evidence was relevant was heavily influenced by the fact that the two events happened close in time, involved the same individuals, and occurred under similar circumstances. Because this evidence was relevant to the force element of the offense of robbery, we find that the court properly allowed it to be admitted. The assignment of error is overruled.

In his second assignment of error, Bush argues:

"The trial court erred to the appellant's prejudice by allowing into evidence testimony regarding the cashier's state of mind."

Bush insists that the trial court erred in allowing the cashier to testify as to her state of mind during the offense. The cashier, for instance, was permitted to testify that she was "scared to death." Bush claims that the cashier's testimony was irrelevant because, according to the court's instruction to the jury and the Ohio Jury Instructions, "[p]roof of fear or apprehension on the part of the victim is not required." 4 Ohio Jury Instructions (1996), Section 511.02(5). Furthermore, Bush argues that the cashier's testimony as to her fear was prejudicial to his case because the cashier's testimony as to his demeanor and actions did not evidence that he used or threatened the use of force and, thus, could not have supported a conviction of robbery. Bush points to the cashier's following

testimony in support of his claim that his demeanor and actions did not convey a threat of force:

"Q.  And you said he took you by the arm.  Would it be fair to say that he just put his hand on your left arm?  You felt his hand?

"A.  Yeah, you know he just took me by the left arm and took me up to the cash register.

"Q.  Well, I'm particularly interested in that part of this incident.  He put his hand on your left arm.  Is that correct?

"A.  Yeah.

"Q.  And the two of you walked towards the cash register?

"A.  Yeah.

"Q.  Would it be fair to say that Danny didn't squeeze your arm anyway.

"A.  No, he was just like two people walking, you know.

"Q.  Didn't squeeze your arm?

"A.  No.

"Q.  Didn't push you?

"A.  No.

"Q.  Didn't pull you?

"A.  No.

"Q.  You just both walked towards the cash register.

"A.  That's all.

"Q.  And then when you got up towards the cash register, he asked you to open up the cash register, correct?

"A.  Yes.

"Q.  He didn't scream that at you, he just said it in a normal voice, open up the cash register.

"A.  He just said it in a normal tone and he said open the cash register and I said, 'What did you say?'  He said, 'Open the cash register,' so I did.

"Q.  You opened up the cash register; and then after you opened up the cash register, he took the money in the cash register.

"A.  (Nods head.)  Then he went over to the lottery tickets and took the lottery tickets.  Then he went back to the end of the counter.  When he got back to the end of the counter, he said he had one more thing to do.  And I said, 'Oh,

Lord,' and I said, 'What?' He never did answer me. He went back to the beer cooler, got himself some beer, and out the door he went.

"Q.   He said, 'I had one more thing to do.' He went in the direction of the beer cooler?

"A.   Yeah, he was walking toward the beer cooler.

"Q.   He said he had one more thing to do. He didn't stop, approach you in any way. He walked towards the beer cooler.

"A.   Just walked to the beer cooler, went back out the door, and never spoke to me after that.

" * * *

"Q.   From the time he took the money out of the cash register until he left the store, he didn't threaten you in any way, did he?

"A.   No, sir, he didn't."

While we agree that proof of fear or apprehension may not be necessary to establish the force element in a robbery case, we do not agree that such proof is impermissible. As we previously stated, the test for force is objective, and force is to be proven by the totality of the circumstances. *Habtemariam*, 103 Ohio App.3d 425, 659 N.E.2d 850. Because the test is objective, proof of the victim's fear and apprehension is not necessary to establish the force element when it is possible for the jury to reasonably conclude that the defendant's statements, actions, and demeanor had that purpose and effect. *State v. Sherrills* (Mar. 17, 1988), Cuyahoga App. No. 53535, unreported, 1988 WL 32116. Although proof of the victim's fear and apprehension is not always *necessary*, the victim's subjective state of mind is *relevant* in determining whether the objective test has been satisfied. In other words, the victim's state of mind is relevant in determining whether a reasonable person would have thought that the defendant was threatening the use of force. Furthermore, although proof of the victim's fear and apprehension is not required in every case, proof of the victim's fear and apprehension may be essential to prove that the defendant's actions conveyed a threat of force when it is questionable whether the defendant's demeanor, actions, and statements had that purpose and effect. Because we find that the victim's state of mind is relevant to the force element of robbery, the assignment of error is overruled.

In his final assignment of error, Bush argues:

"The trial court erred to the prejudice [of appellant] by instructing the jury in a manner contrary to law."

Bush contends that the trial court improperly instructed the jury as to the meaning of the force element of robbery. In particular, Bush argues that the trial court erred in using the following instruction:

"[T]he use or threat of immediate use of force element of the offense of robbery is satisfied if the fear of the alleged victim was of such a nature as in reason and common experience is likely to induce a person to part with property against her will and temporarily suspend her power to exercise her will by virtue of the influence the terror impressed."

The trial court took this instruction verbatim from the syllabus in *State v. Davis,* 6 Ohio St.3d 91, 6 OBR 131, 451 N.E.2d 772. Bush insists that the trial court erred in using this instruction because *Davis* is readily distinguishable from the case at hand. In particular, Bush alleges that *Davis* is distinguishable because the defendant in that case, unlike in the present case, pretended to have a gun, had a threatening demeanor, and used demanding words.

At the outset, we note that the Supreme Court used that standard to test the sufficiency of the evidence as to the element of force; it was not used as a jury instruction. Since *Davis,* appellate courts have likewise used that standard to test the sufficiency of the evidence as to the force element. We have not found any cases, however, where this sufficiency test has been used as a jury instruction.

Turning to Bush's argument, we find that although it is rather inartfully expressed, it has merit. Bush in essence is arguing that the application of the test from *Davis* was improper because the literal reading of the test indicates that the victim's testimony as to his fear is sufficient by itself to satisfy the force element of robbery if the victim's fear was great. After reviewing the instruction, we agree with Bush's contention. The test read literally seems to provide that if a reasonable person, as scared as the victim was, would part with his property against his will, there is sufficient evidence of the threat of force.

Although this is the literal reading of this test, we do not believe that this is what the court in *Davis* had intended. Rather, after reviewing the context of the court's statement in *Davis,* we believe that the court meant that if the fear of the victim was objectively reasonable under the circumstances and that fear would cause a reasonable person to give up his property against his will, then the force element of robbery is satisfied. Using the *Davis* test as a jury instruction without an explanation that, while the fear of the victim is relevant, it also must be reasonable, could have had a prejudicial effect in this case because the jury could have been led to believe that the cashier's fear of personal harm, regardless of whether it was objectively reasonable under the circumstances, was sufficient to find force. Accordingly, the assignment of error is sustained.

We also note that, while this was not raised and cannot serve as a basis for reversal, the court's instruction on the definition of "force" was lacking in that it did not include the requirement of actual or potential harm to persons. We determined in *State v. Furlow*, 80 Ohio App.3d 146, 608 N.E.2d 1112, that the distinguishing factor between theft accomplished by threat and robbery is an element of actual or potential harm to persons. We stated:

"The difference between theft and robbery can be as great as the difference between a first degree misdemeanor and an aggravated felony of the second degree. R.C. 2913.02(B), 2911.02(B). Requiring that the force necessary to elevate a theft to a robbery involve actual or potential harm provides a meaningful distinction between the two offenses. The definition of 'force' in R.C. 2901.01(A) ['any violence, compulsion, or constraint, physically exerted by any means upon or against a person or thing'] without more, does not serve to sufficiently distinguish the offenses of theft and robbery, which carry very different penalties." *Id.* at 148, 608 N.E.2d at 1113.

Hence, we mention for purposes of Bush's retrial, that we find that the court's definition of "force" in the case *sub judice* did not suffice to distinguish between the offenses of robbery and theft.

*Judgment reversed
and cause remanded.*

FAIN, J., concurs.

GRADY, J., concurs separately.

GRADY, Judge, concurring.

I would overrule the first assignment of error, but on an analysis different from that followed by Judge Young.

Evid.R. 404(B) prohibits evidence of extrinsic acts "to prove the character of a person in order to show that he acted in conformity therewith" to commit the crime charged. The rule thus combines the prohibition against the stacking of inferences with the bar against the introduction of character evidence created by Evid.R. 404(A).

Judge Young's resolution of the first assignment of error, that evidence of Bush's behavior thirty minutes earlier is admissible to demonstrate a propensity to use force, employs the very inferential pattern prohibited by Evid.R. 404(B). However, I find no violation of the rule. Bush's acts thirty minutes earlier, in the same location, involving the same victim, are not wholly independent of the offense with which he was charged. Both were part of the same episode on that

occasion.  Therefore, his earlier acts were not so clearly "extrinsic" to the crime charged that the trial court abused its discretion when it admitted evidence of those acts over Bush's objection.  I would overrule the first assignment of error on that basis.