OPINION AND JUDGMENT ENTRY
Appellant, Darrin Flynn, appeals from his conviction on three counts of robbery, in violation of 2911.02(A)(2), felonies of the second degree, and one count of aggravated robbery in violation of 2911.01(A)(1), a felony of the first degree. Appellant asserts the following assignments of error:
 "THE EVIDENCE OF THREAT WAS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT CONVICTIONS FOR ROBBERY AS SET FORTH IN COUNTS ONE AND FOUR OF THE INDICTMENT, AND THE CONVICTIONS ON THOSE COUNTS WERE ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 "THE TRIAL COURT ERRED IN DENYING APPELLANT'S COUNSEL'S REQUEST TO TESTIFY HIMSELF OR TO CALL THE ASSISTANT PROSECUTING ATTORNEY AS A WITNESS."
Appellant was indicted for allegedly committing a series of four robberies over a ten day period. At appellant's jury trial, the following evidence concerning these robberies was adduced.
At 3:00 a.m. on July 6, 1997, Christy Gazda was working at the Speedway Gas Station on Laskey Road in Toledo, Lucas County, Ohio. A man came in and asked where the restroom was. After Gazda waited on another customer, the man came back and asked for a pack of cigarettes. When Gazda entered the sale into the cash register, the man held up fifteen cents and said, "All your money." Gazda thought he was joking, but the man stated, "No, I'm sorry." When Gazda panicked and had difficulty opening the correct cash drawer, the man said "That's not good enough, bitch." Thinking her life was in danger, Gazda finally was able to open the drawer and give the man $146.52.
Gazda stated that the man was approximately five feet seven inches tall, older looking, and weighed about one hundred fifty to one hundred fifty-five pounds. She described him as having a scruffy looking face and deep set blue eyes. Because he had on a baseball cap, she could only describe his hair as being darker brown. Gazda identified appellant as the robber both in a photo array and in court. Additionally, a videotape of the robbery was played for the jury and Gazda identified appellant in the tape as the person who robbed her.
On the evening of July 6, 1997, Angela Cope was the only employee working at the Subway Sandwich Shop located on Phillips Avenue in Toledo, Lucas County, Ohio. According to Cope, a man came into the store and ordered a sandwich. While Cope was preparing his sandwich, another customer came into the store. The man then claimed that he forgot his wallet and would be back. After the second customer left, the man returned to the store. He showed Cope a knife and said, "Give me all the money." Cope testified that she was "scared to death" and did not "know what would happen." Cope complied with the demand and gave the man $80, all the money in the register.
Cope provided the police with a description of the man, stating that he was between twenty and thirty years old, about six feet tall, weighed approximately one hundred seventy pounds, had acne scarred cheeks, longish wavy dark hair, a darker complexion and "strange looking" blue eyes. Shortly after the robbery, Cope selected appellant's photograph from a photo array, indicating that appellant robbed the Subway store. At trial, Cope again identified appellant as the robber.
On July 10, 1997, Jason Bradish was working the four to midnight shift at the Clark gas station on Lewis Avenue in Toledo, Lucas County, Ohio. At approximately 10:45 p.m., a man came in and stood next to the entrance of the back room. When all of the customers in the station left, the man came up to the counter and asked whether Bradish could exchange two dimes and a nickel for a quarter. After Bradish opened the cash drawer, the man told him to "give him all the money." Bradish thought it was a joke. The man said: "This isn't a joke. Give me all your damn money." Bradish hit the alarm. The man said that unless Bradish gave him the money, he would jump over the counter and "kick his ass." According to Bradish, the man kept one hand down near his waist under his shirt. Fearing that the man had a weapon of some kind in his shirt, Bradish gave him the approximately $100 in the cash drawer.
The description of the man Bradish supplied to the police was of an individual with "really blue" eyes with "dark" under them, wavy blondish brown hair "down to his neck" and a white T-shirt. In addition, Bradish said the man was between twenty-four to thirty years old, approximately five feet five inches to five feet ten inches tall and weighed between one hundred thirty to one hundred fifty pounds. Although Bradish was unable to pick appellant out of the photo array, he identified appellant as the man at trial.
Tina Hansch, Bradish's girlfriend, was present during the robbery and related essentially the same sequence of events as Bradish. Her description of the man was also very similar. However, Hansch was able to identify appellant as the robber both in the photo array and at trial.
On July 16, 1997, Nicole Weber was working as a cashier at the In Out Mart on Sylvania Avenue in Toledo, Lucas County, Ohio. Around 10:50 p.m., Weber was mopping the floor in the store, preparing to close. A man came into the store and brought three pieces of bubble gum to the cash register. He handed Weber fifteen cents. When she opened the register drawer, the man demanded that Weber give him the "cash." Weber hesitated and the man took a step forward, right up against the counter. He said, "I'm serious." Fearing that he might jump over the counter or that he had a knife in his pants pocket, Weber grabbed some money, an estimated $100, from the cash drawer and gave it to the man.
Weber described the man as about six feet tall and weighing one hundred thirty to one hundred thirty-five pound. She said he had blondish, short curly hair and was wearing a grayish or white T-shirt, dark pants and dark shoes. Weber identified appellant as the man who robbed the store.
As the man exited through the side door of the In Out Mart, a woman, Joanie Koechley, was entering. She held the door for the man. Without providing an explanation, Weber immediately asked Koechley to follow the man. Koechley did so, but stopped when she realized that she was following a perfect stranger late at night. She returned to the store where she learned that the man had just robbed Weber. Koechley stated that the man had dark circles under his eyes, had shoulder length hair and was wearing a T-shirt and dark pants. She also made an in-court identification of appellant as the man she held the door for and followed.
At the same time that Koechley returned to the In Out Mart, the Rokicki family entered the store. They stated that they saw a suspicious looking van in a parking lot down the street. Mrs. Rokicki said that she saw the man that Koechley was following get into the van. While Koechley and the Rokickis were waiting outside the store for the police to arrive, the van drove slowly past the In Out Mart. Mrs. Rokicki identified the van as the one that the man leaving the market climbed into.
When the police arrived at the store, the witnesses told them that the van was a full size, two tone brown, customized van with chain links around the license plate and a ladder and spare tire on the outside rear doors. The Rokickis' daughter saw a blonde woman driving the van. The woman, Linda Rogge, who is appellant's girlfriend, was tried as a co-defendant for the robbery at the In Out Mart.
After receiving a description of the van, Detective Chad Culpert of the Toledo Police department decided to go to an area of known drug houses near the scene of the In Out robbery to look for the vehicle. The officer spotted the van and followed it for a short time. When the operator of the vehicle ran some red lights, he notified uniformed officers who stopped the van. Koechley was brought to the scene where she identified appellant as the individual that she held the door for.
Based on this evidence, appellant was found guilty of all four charged offenses. His girlfriend was found guilty of robbing the In Out Mart.
In his first assignment of error, appellant contends that the trial court's judgment as to Counts One (the alleged robbery of the Speedway gas station) and Four (the alleged robbery of the In Out Mart) is against the manifest weight of the evidence. Specifically, appellant argues that the element of "the threat of immediate use of force" was not proven beyond a reasonable doubt.
The concept of manifest weight of the evidence is distinguished from an examination of the sufficiency of the evidence. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. In order for an appellate court to reverse a judgment of conviction as against the manifest weight of the evidence, it must disagree with the fact finder's resolution of conflicting testimony. State v. Thompkins (1997), 78 Ohio St.3d 380,387. Therefore, the court, in examining the evidence offered at trial, sits as the "thirteenth juror." Id. This does not allow the reviewing court to lightly substitute its judgment for that of the jury. Reversal may only be had when:
 "`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id. quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
In the present case, Counts One and Four alleged violations of R.C. 2911.02(A), which reads:
 "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
"(1) * * *
 "(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another; * * *."
R.C. 2901.01(A) defines "force or threat of force" as any violence, compulsion, or constraint physically exerted or threatened to be exerted by any means upon a person or thing. "The use or threat of immediate use of force element of the offense of robbery, as expressed in R.C. 2911.02(A), is satisfied if the fear of the alleged victim was of such a nature as in reason and common experience is likely to induce a person to part with property against his will and temporarily suspend his power to exercise his will by virtue of the influence of the terror impressed." Statev. Davis (1983), 6 Ohio St.3d 91, paragraph one of the syllabus.
Looking at the circumstances objectively, the Speedway gas station was robbed during the early morning hours when its sole employee was a woman who had worked there only seven months. The only two persons inside the area where payment for gas is made were appellant and Gazda. As the result of appellant's demeanor and words, Gazda panicked. She testified that he scared "the shit out of" her and that she thought her life was in danger.
Likewise, the robbery of the In Out Mart occurred just before closing and at a time when appellant and a female employee were the only persons in the store. Appellant moved toward Weber when she failed to immediately comply with his demand. Again, the employee feared that she was in danger.
Based on the time of the offense, the gender difference between the victims and the robber, appellant's demeanor and his words, we find that Gazda's and Weber's fear was objectively reasonable under the circumstances and would cause a person to give up her property against her will. See State v. Bush (1997),119 Ohio App.3d 146, 150. That is, one could infer a threat of immediate use of force from the intimidation and/or fear factor present in the situations. See State v. Brown (Sept. 28, 1995), Cuyahoga App. No. 67771, unreported, citing State v. Carter (1985),29 Ohio App.3d 148, syllabus. Accordingly, the trial court's judgment is not against the manifest weight of the evidence.
Appellant also urges that the evidence of force or threat of force was insufficient as a matter of law. The concept of legal sufficiency of the evidence refers to whether the conviction can be supported as a matter of law. State v.Thompkins, 78 Ohio St.3d at 386. In making this determination, the reviewing court must view the evidence in the light most favorable to the prosecution, and determine whether any reasonable trier of fact could find a defendant committed the crime beyond a reasonable doubt. State v. Jenks, 61 Ohio at 273. Upon a review of the evidence, as set forth above, we conclude that a reasonable trier of fact could find that appellant employed a threat of immediate force during the commission of charged offenses. Therefore, his conviction is supported by sufficient evidence as a matter of law.
For these reasons, appellant's first assignment of error is found not well-taken.
In his second assignment of error, appellant asserts the trial court erred by not permitting his trial counsel to testify or to call the prosecuting attorney as a witness. At his trial, appellant's main theory of defense was mistaken identity. He contended that his cousin, Tim McCormick, was the individual who committed the four robberies. Photographs of McCormick were introduced into evidence. Appellant's mother testified that the person identified as the robber on the videotape of the In Out Mart robbery was appellant's cousin, Tim McCormick. McCormick was also identified in the photographs by an acquaintance.
Additionally, appellant's trial counsel attempted to question Detective Steven Burke, the lead investigator in this case, as to his knowledge of Tim McCormick and his relationship to the robberies. While admitting that trial counsel informed him of the fact that the defense believed appellant's cousin committed the robberies, the detective denied ever learning McCormick's name prior to trial or seeing photographs of him. During the defense's case-in-chief trial counsel moved that he be allowed to testify as to the photographs supplied to the prosecution and, apparently, not passed on to police investigators. Counsel argued that the testimony of Detective Burke made it appear as if the defense obstructed the police investigation. In the alternative, trial counsel asked that he be allowed to call the prosecutor to the stand to testify with regard to the same matters. The prosecutor acknowledged receipt of certain photographs of McCormick, but stated that he did not know McCormick's name until trial counsel's opening statement.
The court attempted to fashion a stipulation, to be submitted to the jury, of the information disclosed to the prosecution, but trial counsel and the prosecutor could not reach an agreement. The court subsequently denied trial counsel's motion. The court overruled trial counsel's motion on three bases. First, the court determined that, under Evid.R. 401, the requested evidence was not relevant to the issues in this case. Second, the court held that, even if relevant, the probative value of testimony from either trial counsel or the prosecutor was substantially outweighed by the danger of unfair prejudice, of confusion of the issues and of misleading the jury. See Evid.R. 403. Third, the court determined that neither attorney could testify pursuant to DR 5-102.
Appellant claims that the court failed to follow the proper procedure in applying DR 5-102. DR 5-102(A) provides that "[i]f, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5-101(B)(1) through (4)." DR 5-101(B) reads, in relevant part:
 "A lawyer * * * or a lawyer in his firm may testify:
 "(1) If the testimony will relate solely to an uncontested matter.
 "(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
 "(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.
 "(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or firm as counsel in this particular case."
When an attorney representing a litigant in a pending case requests permission to testify or is called to testify, the court must first determine the admissibility of the evidence without regard to DR 5-102. Mentor Lagoons, Inc. v. Rubin (1987),31 Ohio St.3d 256, paragraph two of the syllabus. If the evidence is admissible, the court may make a sua sponte motion requesting the attorney to withdraw or be disqualified from further representation in the case. Id. The court must then determine whether any of the exceptions in DR 5-101(B) are applicable. Id.
A court's determination of these issues cannot be reversed on appeal absent an abuse of discretion. 155 North High, Ltd. v.Cincinnati Ins. Co. (1995), 72 Ohio St.3d 423, 426. An abuse of discretion is more than an error of law or judgment, it implies that the trial court's attitude in reaching its judgment is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219; Centimark Corp. v. BrowningSprinkler Service, Inc. (1993), 85 Ohio App.3d 485, 487.
In the case under consideration, the trial court first determined that the testimony of appellant's trial counsel and/or the prosecutor was inadmissible because it was irrelevant. In the alternative, the court found that if the testimony was relevant, it was inadmissible under Evid.R. 403. Finally, in deciding whether to allow counsel to testify, the court expressly stated the law applicable to this circumstance and found that the exceptions in DR 5-101(B) (10 through (4) did not apply. Thus, our reading of the court's holdings discloses that the trial judge knew the legal standard to be applied in this situation and, looking at the totality of the circumstances, applied that standard.
Appellant maintains that the purpose of questioning Detective Burke and other witnesses was to demonstrate that the police failed to investigate the lead that the defense provided and that, had they done their job properly, McCormick, not Flynn, would have been on trial for the charged offenses. Appellant argues that, for this reason, testimony clarifying Burke's testimony was relevant and admissible under Evid.R. 401 and not excludable pursuant to Evid.R. 403.
"Relevant evidence" means any evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Evid.R. 401. Additionally, pursuant to Evid.R. 403(A), evidence, although relevant, is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury or is the needless presentation of cumulative evidence.
Even if we assume the testimony of trial counsel or the prosecutor was relevant for the purpose of showing that someone else committed the robberies, that evidence was cumulative. Appellant introduced the photographs of McCormick into evidence and witnesses identified McCormick in those photos. Appellant's mother positively identified the robber in the InOut Mart videotape as McCormick. Additionally, appellant's counsel brought out the fact that a photograph of McCormick was not included in the photo arrays.
As to any clarification of Burke's testimony with regard to a jury impression that trial counsel was obstructing a police investigation, the court correctly determined that this was a collateral issue pitting the credibility of the state's attorney against that of trial counsel and, at best, would have confused the jury. Furthermore, witness testimony and Burke's testimony combined with the prosecutor's admission that he had the photographs (and obviously did not pass them on to the police officers) actually bolstered appellant's defense as it relates to the lack of a police investigation into appellant's claims. Therefore, the court's exclusion of the disputed testimony was also not prejudicial to appellant.
For all of these reasons, the court did not abuse its discretion in determining that the testimony of trial counsel and/or the prosecutor, without regard to DR 5-102, should not be admitted into evidence.
Although we need not address the application of DR 5-101(B), we must agree with the trial court that none of the exceptions DR 5-102 apply. Therefore, the court's attitude in denying appellant's motion was not unreasonable, arbitrary or unconscionable. Accordingly, appellant's second assignment of error is found not well-taken.
On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Melvin L. Resnick, J.
Richard W. Knepper, J.
Mark L. Pietrykowski, J.
CONCUR.