OPINION
{¶ 1} Leonard McBroom appeals from his conviction in Montgomery County Common Pleas Court after a jury trial of robbery in violation of R.C. 2911.02(A)(3). In a single assignment of error, McBroom contends the trial court erred in overruling his motion for acquittal made pursuant to Crim.R. 29.
 {¶ 2} The facts supporting McBroom's conviction are set out in the State's brief and are not essentially contested by McBroom and are supported by our review of the evidence.
 {¶ 3} On September 13, 2001, Amber Zimmer ("Amber"), age seventeen, and Dawn Horstman ("Dawn"), age sixteen, were working alone at a local Dairy Queen store. (Tr. 10, 100, 194-195). There were no customers in the store at approximately 6:00 p.m. on that day. (Tr. 12). However, on that day, at approximately 6:00 p.m., McBroom approached the service counter window and placed an order for a sandwich with Dawn. (Tr. 11, 103). Dawn proceeded to the back of the store to prepare the sandwich McBroom ordered. (Tr. 11,103-104). At this time, Amber remained in the front of the store, near the service counter window. (Tr. 11). Amber asked McBroom if he needed anything else and McBroom stated that he wanted a Coke. (Id.) Although still in the front of the store, Amber had to go to the other side of the store to get the Coke. (Id.)
 {¶ 4} As Amber prepared the Coke, she heard a noise come from the area near the service counter window where McBroom had been standing. (Tr. 12, 43-44). When Amber looked in the direction of the noise, she observed McBroom coming through the service window, which was not a customer entrance. (Tr. 12, 46, 92). Amber described McBroom as being about 5'10" tall, with a medium build and weighing about one hundred and seventy pounds. (Tr. 68-69). Amber was scared. (Tr. 93). She ran to the back of the store, around a cooler near where Dawn had been preparing the sandwich McBroom ordered, back up to the front of the store, and then dove — head first — out of a window to get out of the store and away from McBroom. (Tr. 15-17, 54, 93, 106). McBroom climbed through the window and chased Amber to the back of the store. (Tr. 16, 46, 106-107). As he chased her, McBroom yelled out to Amber, "Get back here!" and "Open this! Open this!" (Tr. 18, 104). Dawn, still in the back of the store, heard McBroom's voice as he yelled to Amber. (Tr. 104-105).
 {¶ 5} When Amber ran to the back of the store, she did not say anything to Dawn; she ran past Dawn and just kept running. (Tr. 54, 105). Dawn first saw Amber running and then saw McBroom running. (Tr. 106-107). Dawn, too, became scared because she saw McBroom in the back of the store and knew that he did not have permission to be in that area of the store. (Tr. 117-119). Dawn then ran out of the store to get away from McBroom. (Tr. 108, 118).
 {¶ 6} When Amber and Dawn were outside of the store, they each observed McBroom exit the store with the top part of the store's cash register. (Tr. 20, 64). Other witnesses outside of the store also observed McBroom exit the store with the cash register under his arm. (Tr. 153). McBroom did not have permission to take the cash register. (Tr. 117).
 {¶ 7} The police subsequently responded to the scene and McBroom was eventually apprehended. (Tr. 22, 111, 207). Both Amber and Dawn positively identified McBroom, in a photo line-up, as the person who entered the Dairy Queen on September 13, 2001. (Tr. 25, 27, 113, 116, 233-239). At trial, the two girls again identified McBroom as the person who entered the Dairy Queen and exited with the cash register on September 13, 2001. (Tr. 28-29, 117-118).
 {¶ 8} McBroom contends the trial court erred in denying his Crim.R. 29 motion because the State presented no evidence that he used or threatened any use of force in taking the store's cash register. McBroom contends the jury was only justified in convicting him of the offense of theft for which the judge gave a lesser-included offense instruction.
 {¶ 9} McBroom concedes that the two young employees were undoubtedly startled by his actions but he never used or threatened to use force against them. In support of McBroom's argument, he cites us to our prior case of State v. Furlow (1992), 80 Ohio App.3d 146. In Furlow,
the defendant snatched the victim's wallet from the victim's hand and ran away. The indictment alleged that Furlow in committing a theft offense "did use force against Clarence E. Brocke." Based upon our determination, that the "force" required for robbery requires actual or potential harm we concluded that the evidence of force was, as a matter of law, insufficient to convict Furlow of robbery.
 {¶ 10} In this matter, McBroom was indicted for violating R.C.2911.02(A)(3) in that "in attempting or committing a theft offense, or in fleeing immediately after the attempt or offense, did use or threaten theimmediate use of force against Dawn Horstman and Amber Zimmer, contrary to the statute.
 {¶ 11} The use or immediate force element of the offense of robbery is satisfied if the fear of the alleged victim was of such a nature as in reason and common experience is likely to induce a person to part with property against his will and temporarily suspend his power to exercise his will by virtue of the influence of the terror impressed.State v. Davis (1983), 6 Ohio St.3d 91 at syllabus 1. Justice William Brown wrote for the court explaining the standard set out in the syllabus:
 {¶ 12} "This court concludes that, under the above standard, the evidence could support the conviction of robbery beyond a reasonable doubt. During the time appellee was demanding and then physically removing the money, he was carrying his right hand under this shirt as if holding a concealed weapon. The statement, `I'm not gonna hurt you * * *,' does not necessarily belie the threat of such a gesture. In fact, that statement could be interpreted to reinforce the threat, conveying the implication that the statement remains applicable only so long as no resistance is offered. Under these circumstances it is for the jury to decide whether the actions and demeanor of appellee constituted a threat of immediate use of force against the store attendants." (Emphasis added).
 {¶ 13} A victim's fear of harm must be objectively reasonable under the totality of circumstances. State v. Bush (1997),119 Ohio App.3d 146. Some appellate courts
 {¶ 14} have upheld robbery convictions under circumstances similar to those of the instant case. In State v. Flynn (July 30, 1999), Wood App. L-98-1175, the court determined that the victims possessed an objectively reasonable fear of force where, in one instance, the defendant robbed a gas station during the early morning hours when its sole employee, a woman, was the only person in the area where payment for the gas could be made. Id. The female employee testified that the defendant "scared `the shit out of her'" when, after he demanded money from her and she had difficulty opening the cash register, the defendant said, "That's not good enough, bitch." Id. at *1, *4. In the second instance, the defendant robbed a convenience store just before closing and at a time when the sole employee, a female, and defendant were the only persons in the store. Id. In this robbery, the defendant moved toward the female employee when she failed to comply with his demand for cash and said, "I'm serious." Id. at *2, *4. This employee, too, testified that she feared she was in danger. Id. at *4. Based on the time of the offenses, the gender differences between the victims and the defendant, and the words the defendant spoke to the victims, the Flynn
court found that the victims' fear was objectively reasonable and that a reasonable trier of fact could find a threat of immediate force from the intimidation factor present in the situations. Id. See, also, State v.Carter (1985), 29 Ohio App.3d 148, 151 (holding that defendant's conduct in running toward elderly victim at high speed and snatching her purse sufficiently constituted threatened force under robbery statute).
 {¶ 15} While Crim.R. 29 requires a trial court to enter a judgment of acquittal on offenses charged in an indictment where the evidence is insufficient to sustain a conviction, a trial court is prohibited from entering a judgment of acquittal under Crim.R. 29 if the record demonstrates that reasonable minds could reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. See Crim. R. 29(A); State v. Bridgeman (1978),55 Ohio St.2d 261, 263-264. Also when a question is before a trial court on the defendant's motion for a judgment of acquittal, the trial court is required to construe the evidence most strongly in favor of the state.State v. Bridgeman, supra, at 263, 264; State v. Fyffe (1990),67 Ohio App.3d 608.
 {¶ 16} The State argues that McBroom's conduct "implied" that he would use force if the victims did not come back to the cash register and open it up for him. The State argues that the victims' fear was objectively reasonable after McBroom dove through the store window and screamed at Amber Zimmer to open the cash register. The State notes that Amber was so scared she dove out of the store window to get away from McBroom.
 {¶ 17} Amber's fear was objectively reasonable in light of McBroom's conduct. That fear of McBroom was of such a nature as in reason and common experience was likely to induce her to abandon the cash register to McBroom rather than risk physical injury. State v. Davis,supra. Certainly, a rational jury could have concluded that the State had produced evidence beyond a reasonable doubt that McBroom had committed the crime of robbery. The trial court properly overruled McBroom's Crim.R. 29 motion. The assignment of error is overruled.
 {¶ 18} The judgment of the trial court is Affirmed.
FAIN, P.J., and WOLFF, J., concur.