OPINION
{¶ 1} Appellant, Adam M. McArthur, appeals the judgment entered by the Lake County Court of Common Pleas. McArthur was sentenced to a prison term of seven years for his robbery convictions. The following facts are relevant to a determination of this appeal. *Page 2 
 {¶ 2} McArthur is an African-American male. On the night of March 11, 2006, McArthur entered the Wal-Mart located in Eastlake, Ohio. McArthur then exited the Wal-Mart and traveled across the street to a local bar where few African-Americans frequent. As McArthur sat alone at the bar, two men began to harass him. They used racial slurs against him and made rude comments, including talk about tying people up to the back of their truck. Although the bartender attempted to control the behavior of the two men, they continued to harass McArthur. Shortly thereafter, McArthur left the bar. The two men followed McArthur out of the bar but returned to the bar within 15 minutes.
 {¶ 3} After leaving the bar, McArthur returned to the Eastlake Wal-Mart. He meandered in front of the registers and repeatedly asked customers for the use of their cell phones. McArthur, in fact, called 9-1-1 to report the harassment he encountered at the bar; however, the call was routed to the central dispatch and was not able to be transferred to the Eastlake dispatch.
 {¶ 4} McArthur then walked over to the eye center inside the Wal-Mart, picked up a pair of sunglasses, put them on, and walked back to the register area where he attempted to take a customer's purchased items. Then, he demanded the cashier, Ms. Danielle Woodard-Williams, to open the drawer and give him the money. As McArthur demanded the money, one of his hands was partially up his coat sleeve. Woodard-Williams complied with McArthur's demand. She opened the register and placed the till, the place where the money is kept, on top of the bag carousel. McArthur then came toward the till to take the money. Woodard-Williams ran toward the customer service desk and called the police. *Page 3 
 {¶ 5} Noticing McArthur taking money from the till, Ms. Diane Tonkin-Collins, a part-time cashier at Wal-Mart, approached him. Tonkin-Collins told McArthur the money he was taking belonged to Wal-Mart and took the till from McArthur. McArthur followed Tonkin-Collins and began shouting and swearing at her. McArthur warned her, "[I]f you don't get out of my way, you know what's going to happen to you?"
 {¶ 6} At that moment, Sergeant Ralph Stanek, an unarmed, off-duty police officer, intervened. Sergeant Stanek approached McArthur and told him he was a police officer. McArthur ignored Sergeant Stanek and continued to scream at Tonkin-Collins. Within ten seconds of Sergeant Stanek's intervention, the Eastlake Police arrived and took McArthur into custody.
 {¶ 7} On May 15, 2006, McArthur was indicted on four counts of robbery — two counts in violation of R.C. 2911.02(A)(2), felonies of the second-degree, and two counts in violation of R.C. 2911.02(A)(3), felonies of the third-degree.
 {¶ 8} Initially, McArthur entered a plea of not guilty to all charges. Later, McArthur amended his plea to not guilty by reason of insanity. The trial court held a competency hearing and determined McArthur was competent to stand trial. A jury trial commenced on October 23, 2006. The jury found McArthur guilty on all four charges.
 {¶ 9} On November 20, 2006, the trial court held McArthur's sentencing hearing. The trial court merged all four convictions for purposes of sentencing and imposed a seven-year prison sentence.
 {¶ 10} Appellant timely filed a notice of appeal and has set forth four assignments of error. His first assignment is: *Page 4 
 {¶ 11} "The trial court erred to the prejudice of the defendant-appellant when it denied his motion for acquittal made pursuant to Crim.R. 29."
 {¶ 12} Pursuant to Crim.R. 29(A), a trial court is required to order an acquittal of "one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 13} The Supreme Court of Ohio, in State v. Bridgeman, established the standard for evaluating motions for acquittal. State v.Bridgeman (1978), 55 Ohio St.2d 261. The Bridgeman Court stated that, "[p]ursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." Id. at syllabus. When determining whether there is sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307. Thus, "[a]n appellate court must look to the evidence presented to determine if the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt." State v.Clark, 11th Dist. No. 2002-A-0056, 2003-Ohio-6689, at ¶ 16. Furthermore, "[t]he verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the [jury]." State v. Dennis (1997), 79 Ohio St.3d 421, 430. *Page 5 
 {¶ 14} In the case sub judice, McArthur was charged with four counts of robbery in violation of R.C. 2911.02(A)(2) and R.C. 2911.02(A)(3). The jury was instructed, "[b]efore you can find the Defendant committed a robbery, you must find beyond a reasonable doubt that the Defendant committed a theft offense." The theft statute, R.C. 2913.02, states, in pertinent part:
 {¶ 15} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 {¶ 16} "(1) Without the consent of the owner or person authorized to give consent."
 {¶ 17} Additionally, "purposely" and "knowingly" have been defined in R.C. 2901.22 as follows:
 {¶ 18} "(A) A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in the conduct of that nature.
 {¶ 19} "(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 20} Furthermore, the trial court gave the jury the following instructions on the definition of "deprive": *Page 6 
 {¶ 21} "[T]o withhold property of another permanently or for such period as to appropriate a substantial portion of its value or use. Or with purpose to restore it only upon payment of a reward or consideration. Or to dispose of property so as to make it unlikely that the owner will recover it, or to accept, use, or appropriate money, property, or services with purpose not to give proper consideration in return therefore. And without reasonable justification or excuse for not giving proper consideration."
 {¶ 22} McArthur challenges the sufficiency of evidence on each element of theft. First, McArthur asserts the state failed to show that he knowingly obtained or exerted control over the property. Second, McArthur claims the state failed to show that he acted with the purpose to deprive anyone of their property or services.
 {¶ 23} McArthur argues "[his] purpose was not to actually maintain any type of control over" the money he took, as "[h]e was merely going through the motions in order to get someone to call the police." McArthur points to the facts that he made statements regarding calling the police, used a customer's cell phone to call the police, and dropped the money upon being handcuffed. However, as to the definition of `purposely,' the jury was specifically instructed, "[w]here an act is a crime, a good motive or purpose is not a defense."
 {¶ 24} Furthermore, there is ample evidence from which a reasonable mind could conclude McArthur was in fact exerting control over the property of another with the intent to deprive that person of the property. On several occasions, McArthur referred to the money as "my * * * money." Moreover, upon being approached by an off-duty police officer, McArthur did not surrender the money. In fact, he only surrendered the paper money after he was handcuffed by Officer Thompson, an on-duty police officer. *Page 7 
The coin money, however, was not recovered until McArthur was taken into custody. Thus, based on the foregoing analysis, we conclude that the evidence was sufficient for the trier of fact to find McArthur guilty of robbery, specifically the elements of theft, beyond a reasonable doubt.
 {¶ 25} For the reasons indicated, the trial court did not err by denying McArthur's motion for acquittal.
 {¶ 26} Therefore, McArthur's first assignment of error is without merit.
 {¶ 27} In his second assignment of error, McArthur submits the jury verdict is against the manifest weight of the evidence since the evidence demonstrates that he did not act with the requisite force. McArthur argues "it is clear through the testimonies from both of the Wal-Mart cashiers that there was no threat involved in this situation." McArthur supports this assertion by pointing to the fact that the cashiers added a paragraph to their statements about being threatened only after being questioned about it by the police officers. We disagree.
 {¶ 28} When addressing whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following test:
 {¶ 29} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" State v. Thompkins (1997), 78 Ohio St.3d 380, 387. *Page 8 
 {¶ 30} The weight to be given to the evidence and the credibility of witnesses are primarily matters for the jury to decide. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Moreover, "[t]he trier of fact is free to believe or disbelieve all or any of the testimony. * * * The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. * * * Consequently, although an appellate court must act as a `thirteenth juror' when considering whether the manifest weight of the evidence requires reversal, it must also give great deference to the fact finder's determination of the witnesses' credibility. * * *" State v.Sevilla, 10th Dist. No. 06AP-954, 2007-Ohio-2789, at ¶ 13. (Internal citations omitted.)
 {¶ 31} The robbery statute, R.C. 2911.02, states, in pertinent part:
 {¶ 32} "(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 33} "* * *
 {¶ 34} "(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;
 {¶ 35} "(3) Use or threaten the immediate use of force against another."
 {¶ 36} Furthermore, "force" is defined in R.C. 2901.01(A)(1) as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." The element of force, as it pertains to the offense of robbery, is satisfied "if the fear of the alleged victim was of such a nature as in reason and common experience is likely to induce a person to part with property against his will and temporarily suspend his power to exercise his will by virtue of the influence of the terror impressed." State v. Davis (1983), 6 Ohio St.3d 91, paragraph one of the syllabus. In order to satisfy the *Page 9 
force element of robbery, the threat of violence, compulsion, or constraint may be implied from the perpetrator's demeanor and tone of voice; it need not be direct and explicit. In re Burton,160 Ohio App.3d 750, 2005-Ohio-2210, at ¶ 7, citing State v. Bush (1997),119 Ohio App.3d 146, 150.
 {¶ 37} It was established that when McArthur demanded the money, he told Woodard-Williams, "`[b]itch, open that mother * * * drawer and give me my mother * * * money.'" As he was demanding the money, one of his hands was partially up his coat sleeve. As one witness recalled, "`[y]ou couldn't see his hands, but I took it as a gesture of a weapon.'" It was further established through the testimony of Officer Thompson that after the incident Woodard-Williams was hysterical, shaking, crying, and having difficulty breathing. In fact, Woodard-Williams was so shaken that she had to dictate her statement to Officer Thompson. Additionally, Woodard-Williams testified that although she could not remember the exact words, McArthur had threatened her.
 {¶ 38} Further, Tonkin-Collins testified that McArthur was standing very close to her, shouting and swearing at her. According to the testimony of Sergeant Stanek, McArthur was standing only eight to ten inches from Tonkin-Collins and he "`[l]ook[ed] like he [was] ready to take her out.'" McArthur warned Tonkin-Collins, "`[i]f you don't get out of my way, you know what's going to happen to you?'"
 {¶ 39} Therefore, based on the above-described threatening demeanor and demanding words and after reviewing the record and weighing the evidence and all reasonable inferences, we cannot conclude the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Page 10 
 {¶ 40} McArthur's second assignment of error is not well-founded.
 {¶ 41} McArthur's third assignment of error is:
 {¶ 42} "The trial court violated the defendant-appellant's constitutional right to fair trial and due process as guaranteed by theSixth and Fourteenth Amendments to the United States Constitution and Sections 5 and 10, Article 1 of the Ohio Constitution when it admitted inadmissible hearsay testimony."
 {¶ 43} McArthur alleges the trial court allowed impermissible hearsay testimony from Officer Thompson relating to statements made by Woodard-Williams. An appellate court will review the trial court's admission or exclusion of evidence for abuse of discretion. State v.Ahmed, 103 Ohio St.3d 27, 2004-Ohio-4190, at ¶ 79. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980), 62 Ohio St.2d 151, 157. (Citations omitted.)
 {¶ 44} Under this standard of review, "an appellate court may not substitute its judgment for that of the trial court." State v.Glynn, 9th Dist. No. 02CA0090-M, 2003-Ohio-1799, at ¶ 4.
 {¶ 45} Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is generally inadmissible unless it falls into one of the applicable exceptions. Evid.R. 802. One such exception is the excited-utterance exception. An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2). While there is no set time period a statement must *Page 11 
fall into in order to be considered an excited utterance, the statement "must be made while the declarant is still under the stress of the event" must not be a result of reflective thought. State v.Butcher, 170 Ohio App.3d 52, 2007-Ohio-118 at ¶ 31.
 {¶ 46} Further, "the admission of a declaration as an excited utterance is not precluded by questioning which: (1) is neither coercive or leading, (2) facilitates the declarant's expression of what is already the natural focus of the declarant's thoughts, and (3) does not destroy the domination of the nervous excitement over the declarant's reflective faculties." State v. Wallace (1988), 37 Ohio St.3d 87, 93.
 {¶ 47} In this case, the trial court permitted Officer Thompson to testify as to what Woodard-Williams said to him. Officer Thompson explained that when he initially approached Woodard-Williams, she was hysterical, shaking, crying, and having difficulty breathing. Once Officer Thompson knew that Woodard-Williams would be "ok," he left her with another Wal-Mart employee so she would have the opportunity to collect herself and give a statement. Approximately 45 minutes later, Officer Thompson again approached Woodard-Williams, who was still shaken from the incident.
 {¶ 48} There is indication in the record that approximately 45 minutes elapsed between the time Officer Thompson arrived at the scene and the time he took the statement of Woodard-Williams. Yet, while the timing of the event may have some bearing on whether Woodard-Williams was still under the stress of the event, it is not the determinative factor. The statement made by Woodard-Williams must not have been the result of reflective thought. Woodard-Williams' response was an answer to a question by a police officer. Although Officer Thompson testified that he did not ask Woodard-Williams about feeling threatened, Woodard-Williams testified that he asked *Page 12 
her if there was "`some sort of threat or something like that?'" Therefore, although Woodard-Williams may still have been upset due to the incident, her response about being threatened was clearly a result of reflective thought.
 {¶ 49} Further, McArthur asserts the trial court erred when overruling his objection to hearsay evidence when he had not "opened the door" to the admission of such evidence. The term "open the door" is generally associated with Evid.R. 404(A)(1) which states, in pertinent part, "[e]vidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same is admissible * * *." For example, the accused "opens the door" when he introduces evidence of a pertinent trait of character and, to rebut this evidence, the state may introduce evidence to the contrary.
 {¶ 50} McArthur argues that a party cannot use the "open door" theory as a "means to justify the state's introduction of improper, highly prejudicial hearsay evidence." State v. Griffin (2001),142 Ohio App.3d 65, 78-79. However, in this case, Woodard-Williams testified on direct-examination that although she could not remember the exact words, McArthur had threatened her and that in fact she did feel threatened. On cross-examination, Woodard-Williams testified that Officer Thompson, when making the police report, asked her "`was there some sort of threat or something like that?'" Defense counsel continued with this line of questioning asking Woodard-Williams about the details of the report and the threats of McArthur. Therefore, on direct-examination of Officer Thompson, the state asked him if he had questioned Woodard-Williams about being threatened or if she told him she was threatened. Under the above scenario, it was within the discretion of the trial court to determine that defense counsel opened the *Page 13 
door to the hearsay testimony concerning what Woodard-Williams had said to the police officer.
 {¶ 51} Even if it should be found defense counsel did not "open the door" to this type of questioning, the admission of such evidence is harmless. In order to consider the errors harmless, we must find beyond a reasonable doubt that the errors did not contribute to the verdict.State v. Johnson (1994), 71 Ohio St.3d 332, 339.
 {¶ 52} In this matter, Woodard-Williams previously testified, during direct-examination, that McArthur threatened her. Therefore, a repetition of that statement made by Officer Thompson clearly did not contribute to the verdict.
 {¶ 53} McArthur's third assignment of error is without merit.
 {¶ 54} In the fourth assignment of error, McArthur alleges:
 {¶ 55} "The trial court erred by sentencing the defendant-appellant to the maximum sentence of imprisonment."
 {¶ 56} McArthur argues the trial court failed to give appropriate consideration to R.C. 2929.12(B). Pursuant to State v. Payne, 11th Dist. No. 2006-L-272, 2007-Ohio-6740, at ¶ 19, this court has held post-Foster felony sentencing is generally reviewed for abuse of discretion. "[I]f the sentence falls within the statutory range for the offenses for which the defendant was convicted, then we presume that the trial court considered the sentencing criteria in imposing defendant's sentence even where the record is silent on that point." Id. at ¶ 20. There are certain limited circumstances, however, where the clear and convincing standard of review remains viable. For example, the clear and convincing standard of review will be employed where it is alleged the sentence is *Page 14 
contrary to law. Id. at ¶ 19-20. See, also, e.g., State v. Burton, 10th Dist. No. 06AP-690, 2007-Ohio-1941.
 {¶ 57} "Although a trial court is required to consider the seriousness and recidivism factors, the court does not `"need to make specific findings on the record in order to evince the requisite consideration of all applicable seriousness and recidivism factors."'" State v.Lewis, 11th Dist No. 2006-L-224, 2007-Ohio-3014, at ¶ 24. (Citations omitted.)
 {¶ 58} At the sentencing hearing, the trial court stated it had considered both the overriding purposes of felony sentencing pursuant to R.C. 2929.11 and the seriousness and recidivism factors outlined in R.C.2929.12. In addition, the trial court enumerated the factors it found applicable, and its judgment entry of sentence states the court considered "the principles and purposes of sentencing under R.C.2929.11, and has balanced the seriousness and recidivism factors under R.C. 2929.12." We further note that since McArthur's sentence is within the statutory range, the trial court did not abuse its discretion. See R.C. 2929.14(A)(2).
 {¶ 59} As to the claim that McArthur committed the act for his own preservation, the trial court stated:
 {¶ 60} "The Defendant's response to his perceived threat from the individuals from the nearby bar was wholly inappropriate. He was confronted by an off-duty police officer who identified himself early on in the incident, and if the Defendant were truly seeking refuge from a perceived threat, then that would have been a prime opportunity. Certainly robbing somebody and going after a till with money is not a response that is appropriate for someone who is allegedly fleeing for his life." *Page 15 
 {¶ 61} Therefore, McArthur's fourth assignment of error is without merit. {¶ 62} The judgment of the trial court is affirmed.
 DIANE V. GRENDELL, J., MARY JANE TRAPP, J., concur. *Page 1