JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Stephanie Foster appeals her convictions for robbery and intimidation. Foster assigns the following errors for our review:
 "I. The State failed to present sufficient evidence to sustain a conviction."
 "II. Appellant's convictions are against the manifest weight of the evidence."
 "III. Appellant was denied effective assistance of counsel as guaranteed by Section 10, Article I, of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution when counsel failed to make a motion for acquittal pursuant to Rule 29."
 "IV. Appellant was denied a fair trial due to prosecutorial misconduct in violation of his rights as guaranteed by Article I, Section 10 of the Ohio Constitution and the Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution."
 {¶ 2} Having reviewed the record and pertinent law, we affirm Foster's convictions. The apposite facts follow.
 {¶ 3} On November 1, 2006, the Cuyahoga County Grand Jury indicted Foster on one count of robbery and two counts of intimidation. On May 1, 2007, Foster executed a voluntary waiver of her right to a jury trial and a bench trial commenced the following day.
 Bench Trial {¶ 4} At trial, the victim, Darryl Pilkington, testified that he has been a resident of Simmons Adult Care Group Home for approximately six years. *Page 3 
Pilkington testified that on October 19, 2006, he was sitting in his bedroom with his roommate, Andrew McPherson, when Foster entered. Foster asked if she could look around for her niece's picture and Pilkington told her she could.
 {¶ 5} Pilkington testified that Foster searched for a few moments and then grabbed his coin purse that was laying on his bed. Foster attempted to run out of the room, but Pilkington immediately got up, grabbed her, and struggled to reclaim the purse. Pilkington testified that Foster overpowered him and ran out of the room.
 {¶ 6} Pilkington testified that the coin purse contained approximately $50 and his identification cards. Pilkington testified that a few days after the robbery, a neighbor found his purse a block from the group home. When the purse was recovered, it contained only Pilkington's identification cards, but not the money.
 {¶ 7} Earl Montgomery testified that he has been a caregiver at Simmons Adult Care Group Home, a home for mentally ill and developmentally challenged people. Montgomery testified that the residents of the group home are allowed to leave the facility, but are required to return by 10:30 p.m., and are also required to be available to take their medication.
 {¶ 8} Montgomery testified that on October 19, 2006, between 6:30 p.m. and 7:30 p.m., he was sitting on the front porch of the group home when he observed Foster walking out of the home at a very fast pace. Montgomery asked Foster where she was going, and Foster only responded that she would be returning. *Page 4 
Montgomery testified that Foster's hand was cupped, but he could not see whether Foster was holding anything.
 {¶ 9} Montgomery testified that approximately three minutes later, Pilkington came to him and indicated that Foster had taken his change purse. Montgomery testified that Pilkington was very upset. Montgomery called the police, who arrived a short time later, took an incident report and left.
 {¶ 10} Montgomery testified that Foster returned to the group home around 9:30 p.m. that night. Montgomery called the police, who came back to the group home and arrested Foster. Montgomery testified that as the police was escorting Foster out of the home, Foster turned to Pilkington and stated: "I'm going to get you when I get back."
 {¶ 11} Officer Nikolai Prezybylski, of the Cleveland Police Department, testified that on October 19, 2006, he was dispatched to Simmons Adult Care Group Home in response to a report that a resident had been robbed. Officer Prezybylski testified that when he arrived at the group home, he spoke with Pilkington, who indicated that Foster had entered his room, and after a tussle, had taken his change purse. Officer Prezybylski testified that Pilkington was visibly shaken and upset.
 {¶ 12} Officer Prezybylski testified that he and his partner canvassed the area in search of Foster, but was unable to locate her. Officer Prezybylski testified that approximately two hours later, he was dispatched back to the group home, where *Page 5 
Foster was now present. Officer Prezybylski testified that he placed Foster under arrest, and as she was being escorted from the home, Foster confronted Pilkington and stated: "You're going to regret this. This won't stick. When I get out, you are going to pay." Officer Prezybylski testified that Pilkington was visibly upset upon hearing Foster's statements.
 {¶ 13} At trial, Foster, age twenty-three, testified in her own defense. Foster denied being a resident of the group home on October 19, 2006. According to Foster, she had been staying with a girlfriend at the time of the alleged robbery. Foster testified that she was working at Whitmore's Barbecue when she received a telephone call from Ronnie Simmons, the owner of the group home. According to Foster, Simmons told her she needed to go to the home because the police were looking for her. Foster testified that she went to the group home where she was later arrested.
 {¶ 14} Foster denied entering Pilkington's room and denied taking his change purse. Foster testified that she made the threatening statements because she was angry and frustrated at being blamed for the robbery. Foster testified that she becomes angry when she does not take her medications and when she uses alcohol.
 {¶ 15} The trial court found Foster guilty of one count of robbery and one count of intimidation. The trial court sentenced Foster to two years of community *Page 6 
control sanctions. The trial court also ordered Foster to enter housing arranged through Cuyahoga County's Board of Mental Health.
 Sufficiency of Evidence {¶ 16} In the first assigned error, Foster argues the State failed to present sufficient evidence to sustain her convictions. We disagree.
 {¶ 17} The sufficiency of the evidence standard of review is set forth in State v. Bridgeman:[1]
 "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."[2]
 {¶ 18} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks,[3] in which the Ohio Supreme Court held:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if *Page 7 believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [(1979)], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"
 {¶ 19} In the instant case, the trial court found Foster guilty of robbery in violation of R.C. 2911.02(A), which provides in pertinent part as follows: "A person commits robbery when, in attempting or committing a theft offense * * * or in fleeing immediately after such attempt or offense, uses or threatens the immediate use of force against another."[4] Foster contends that, even if Pilkington's testimony is to be believed, the State did not present any evidence that she used or threatened to use force in doing so. We are not persuaded.
 {¶ 20} The test for the force or threat of force element in a robbery prosecution is objective.[5] The element is satisfied if the accused's conduct "in reason and common experience is likely to induce a person to part with property against his will and temporarily suspend his power to exercise his will by virtue of *Page 8 
the influence of the terror impressed."[6] In purse snatching cases, the evidence is sufficient to show that defendant exerted force toward the victim, so as to support a conviction for robbery, when it shows that the accused physically exerted enough force upon the victim's arm so as to remove the purse from her involuntarily.[7]
 {¶ 21} Here, Pilkington testified that Foster grabbed his coin purse, which was laying on the bed and attempted to run out of the room. Pilkington immediately got up, grabbed Foster, and a tussle ensued. Pilkington testified that Foster overpowered him and ran off with the coin purse. Viewing this evidence in the light most favorable to the State, we find that a rational trier of fact could have found the essential element of force proven beyond a reasonable doubt. Consequently, the trial court properly found Foster guilty of robbery.
 {¶ 22} In the instant case, the trial court also found Foster guilty of intimidating
Pilkington in violation of R.C. 2921.04(B), which provides, in pertinent part:
 "No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges."
 {¶ 23} Here, Pilkington, Montgomery, and Officer Prezybylski testified that as Foster was being led to the zone car, she stated: "I will get you. I am going to get *Page 9 
you back for this." Pilkington testified that he was intimidated by the statement and worried that Foster might try to do something to him after she was released from jail.[8] However, Foster argues she was already in handcuffs when the statement was made, essentially asserting that the threat was not imminent. We are not persuaded.
 {¶ 24} The offense of intimidation does not require that the actions of the speaker cause the victim to believe the speaker would cause imminent physical harm. Rather, it is the unlawful threat of harm, and not actual harm, that serves as a basis for the offense of intimidation.[9] Construing the testimony in a light most favorable to the State, as we are required to do, it is clear there was sufficient evidence which, if believed, demonstrated that Foster engaged in an act of intimidation.
 {¶ 25} We conclude on the record before us that any rational trier of fact could have found the essential elements of robbery and intimidation proven beyond a reasonable doubt. Accordingly, we overrule the first assigned error.
 Manifest Weight of Evidence {¶ 26} In the second assigned error, Foster argues her convictions are against the manifest weight of the evidence. We disagree. *Page 10 
 {¶ 27} In State v. Wilson,[10] the Ohio Supreme Court recently addressed the standard of review for a criminal manifest weight challenge, as follows:
 "The criminal manifest-weight-of-the-evidence standard was explained in State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. In Thompkins, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387, 678 N.E.2d 541. 'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.' Id. at 387, 678 N.E.2d 541, citing Tibbs v. Florida (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652."
 {¶ 28} As discussed in our resolution of the first assigned error, Foster's convictions were based on substantial and sufficient evidence. As previously discussed, Pilkington testified that Foster entered his room, snatched his coin purse off the bed, and attempted to run out of the room. Thereafter, a tussle ensued between Pilkington and Foster. In the end, Foster overpowered Pilkington and fled. *Page 11 
 {¶ 29} In addition, three witnesses testified that Foster threatened Pilkington after she was arrested. Further, Pilkington testified that he believed Foster's statement to be a threat and he felt intimidated.
 {¶ 30} Nonetheless, Foster argues that Pilkington's testimony is not credible. We are mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence.[11] The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.[12]
 {¶ 31} Consequently, we cannot say that the trial court clearly lost its way resulting in a manifest miscarriage of justice. Accordingly, we overrule the second assigned error.
 Ineffective Assistance of Counsel {¶ 32} In the third assigned error, Foster argues she was denied the effective assistance of counsel because defense counsel failed to make a motion for acquittal. We disagree. *Page 12 
 {¶ 33} We review a claim of ineffective assistance of counsel under the two-part test set forth in Strickland v. Washington[13] UnderStrickland, a reviewing court will not deem counsel's performance ineffective unless a defendant can show his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance.[14] To show prejudice, a defendant must prove that, but for his lawyer's errors, a reasonable probability exists that the result of the proceedings would have been different.[15] Judicial scrutiny of a lawyer's performance must be highly deferential.[16]
 {¶ 34} Failure to move for an acquittal under Crim. R. 29 is not ineffective assistance of counsel, where the evidence in the State's case demonstrates that reasonable minds can reach different conclusions as to whether the elements of the charged offense have been proved beyond a reasonable doubt, and that such motion would have been fruitless.[17]
 {¶ 35} Our review of the record convinces us that the State's evidence showed that reasonable minds could have reached different conclusions as to *Page 13 
whether the elements of robbery and intimidation had been proven beyond a reasonable doubt, and that a motion for acquittal would have been properly overruled. Moreover, we have already concluded that the State presented sufficient evidence to sustain Foster's convictions, and that her convictions were not against the manifest weight of the evidence. Consequently, Foster was not denied the effective assistance of counsel. Accordingly, we overrule the third assigned error.
 Prosecutorial Misconduct {¶ 36} In the fourth assigned error, Foster argues she was denied a fair trial due to prosecutorial misconduct during closing argument. We disagree.
 {¶ 37} A prosecuting attorney's conduct during trial does not constitute grounds for error unless the conduct deprives the defendant of a fair trial.[18] The touchstone of a due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.[19] The effect of the prosecutor's misconduct must be considered in light of the whole trial.[20]
Furthermore, a prosecutor is afforded wide latitude during closing argument, and it *Page 14 
is within the trial court's sound discretion to determine whether a comment has gone too far.[21]
 {¶ 38} In the instant case, Foster contends that she was denied a fair trial because the prosecutor made the following statement during closing argument:
 "It's hard to believe she's facing a felony and not oneperson that she works with or that her family or friends would come downhere and testify on her behalf."[22]
 {¶ 39} Initially, we note that this was a bench trial. In a bench trial, the trial judge acts as the trier-of-fact, and, unless it affirmatively appears to the contrary, a reviewing court will presume that the trial court acted impartially and considered only properly admitted evidence.[23]
 {¶ 40} We find that there is sufficient evidence, other than the above statement, that, if believed, would sustain the verdicts. We also find that there is no indication in the record that the judge was influenced by or considered the above statement in arriving at the verdicts. Moreover, since closing argument is just that — argument-and not evidence, we find no prejudicial error. Accordingly, we overrule the fourth assigned error.
 Judgment affirmed. *Page 15 
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, A.J., and MARY J. BOYLE, J., CONCUR
[1] (1978), 55 Ohio St.2d 261, syllabus.
[2] See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19, 23;State v. Davis (1988), 49 Ohio App.3d 109, 113.
[3] (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
[4] In re Boggess, 4th Dist. No. 05CA9,2005-Ohio-6527.
[5] State v. Bush (1997), 119 Ohio App.3d 146, 150; State v.Habtemariam (1995) 103 Ohio App.3d 425, 429.
[6] State v. Davis (1983), 6 Ohio St.3d 91, paragraph one of the syllabus.
[7] See State v. Johnson (1988), 61 Ohio App.3d 203, 205; State v.Steinbach, 5thDist. No. 2004CA00079, 2004-Ohio-6821, at TJ20.
[8] Tr. at 84.
[9] State v. Perkins, Cuyahoga App. No. 86685, 2006-Ohio-3678.
[10] 113 Ohio St. 3d 382, 2007-Ohio-2202.
[11] State v. DeHass (1967), 10 Ohio St.2d 230.
[12] Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
[13] (1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052.
[14] State v. Bradley (1989), 42 Ohio St.3d 136, paragraph one of syllabus.
[15] Id. at paragraph two of syllabus.
[16] State v. Sallie (1998), 81 Ohio St.3d 673, 674.
[17] State v. Adams (Aug. 24, 2001), 1st Dist. Nos. C-000388, C-000389, and C-000390.
[18] State v. York, Cuyahoga App. No. 87814, 2006-Ohio-6934; State v.Keenan (1993), 66 Ohio St.3d 402-405; State v. Gest (1995),108 Ohio App.3d 248, 257.
[19] Smith v. Phillips (1982), 455 U.S. 209, 102 S.Ct. 940,71 L.Ed. 2d 78.
[20] State v. Durr (1991), 58 Ohio St.3d 86, 94; Maurer, supra at 266.
[21] State v. Benge, 75 Ohio St.3d 136, 1996-Ohio-227.
[22] Tr. at 170.
[23] State v. Neal, Cuyahoga App. No. 89574, 2008-Ohio-1077; see, also, State v. Post (1987), 32 Ohio St.3d 380, 384. *Page 1