[Cite as *State v. Brunner*, 2019-Ohio-3410.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case Nos. 18CA3848 |
| | : | 18CA3849 |
| vs. | : | |
| | : | DECISION AND |
| DOUGLAS L. BRUNNER, JR., | : | JUDGMENT ENTRY |
| | : | |
| Defendant-Appellant. | : | |

_____
APPEARANCES:

Matthew F. Loesch, Portsmouth, Ohio, for Appellant.

Shane A. Tieman, Scioto County Prosecuting Attorney, and Jay Willis, Assistant Prosecuting Attorney, Portsmouth, Ohio, for Appellee.
_____

Smith, P.J.

{¶1} Appellant, Douglas Brunner, Jr., appeals his conviction for robbery, a third-degree felony in violation of R.C. 2911.02(A)(3). On appeal, Appellant contends that 1) prosecutorial misconduct occurred during the cross-examination of his witness, Michael Miller; 2) the trial court abused its discretion in instructing witness Michael Miller regarding perjury in the presence of the jury; 3) his conviction for third-degree felony robbery was against the manifest weight and sufficiency of the evidence; 4) the trial court abused its discretion in sentencing him to the maximum time allowed by law in the instant case; and 5) his trial

counsel was ineffective when he failed to request a jury instruction regarding eyewitness identification. Because we find the errors made by the prosecution did not rise to the level of prosecutorial misconduct and the errors made by the trial court did not constitute reversible error, Appellant's first and second assignments of error are overruled. Likewise, Appellant's third assignment of error is overruled in light of our finding that his conviction was supported by sufficient evidence and was not against the manifest weight of the evidence. Further, because appellant's maximum and consecutive sentences were supported by the record and were not contrary to law, his fourth assignment of error is overruled. Finally, having found Appellant failed to demonstrate his counsel was deficient, Appellant's fifth assignment is also overruled. Accordingly, having found no merit in the assignments of error raised by Appellant, the judgment of the trial court is affirmed.

## FACTS

{¶2} Appellant was indicted in the Scioto County Court of Common Pleas on one count of robbery, a third-degree felony, in violation of R.C. 2911.02(A)(3). The indictment stemmed from an incident that occurred at a Wendy's restaurant in Scioto County at approximately 9:00 p.m. on December 20, 2017. A separate companion case was filed charging Appellant with a community control violation based upon his failure to report for over a year, as well as the commission of a new

felony (the robbery indictment).  Appellant admitted to the community control violation, but the robbery charge proceeded to a jury trial.

{¶3} The State presented several witnesses at trial, including:  Daniel Collins, the employee who was working the drive-thru on the night in question; Robert Madden, the employee who was working the cash register; Kimberly Mercer, the shift manager; Gina Maynard, the district manager; Officer Michael Queen from the Portsmouth Police Department, who was dispatched to Wendy's when the incident was reported; Sergeant Nathan Williams from the Portsmouth Police Department, who located and detained Appellant and his co-defendant, Michael Miller, later that night; and Detective Steven Timberlake from the Portsmouth Police Department, who took over the investigation once Appellant and Miller were apprehended.

{¶4} Pertinent to the issues on appeal, cashier Robert Madden testified that he was working as the cashier at Wendy's on the night in question when two men, later identified as Appellant and Michael Miller, walked in.  A man wearing a khaki jacket went into the bathroom and the other man, who was wearing a Cleveland Cavaliers hat, stood in the lobby for a short while and then walked up to the counter and placed an order.  As Madden was completing the order, a man walked through a door next to the cash register and entered the employee-only area behind the counter.  Madden testified that he got a good look at the man and

maintained eye contact with him throughout the incident. Madden further identified Appellant as the perpetrator in open court during trial. Madden testified that Appellant repeatedly poked him and told him not to try anything. He testified he felt threatened and was scared, and that he complied because he didn't know if Appellant had a weapon, but he could only assume he did based upon his conduct. Madden further testified that after Appellant took cash out of the drawer, he ordered him to get on his knees and put his head against the wall, and that he complied because he was afraid to interfere and was not sure what Appellant might do. Appellant then fled with Miller.

{¶5} Daniel Collins, who was working the drive-thru, also testified at trial. He testified that although he could not see the perpetrator's face, he saw a man come through the employee door and rob Madden. He testified that the perpetrator had his right hand in his coat pocket and it looked like he was holding something. Additional testimony introduced at trial indicated the two men were seen by shift manager, Kimberly Mercer, leaving the parking lot in an orange Pontiac. Mercer was able to view the license plate number and provide it to law enforcement. Appellant and Miller were arrested several hours later after being located at a BP gas station in an orange Pontiac. A Cleveland Cavaliers hat was located on the dash of the vehicle and a khaki jacket was found in the backseat.

{¶6} In addition to witness and law enforcement testimony, the State played the surveillance video for the jury. The jury also viewed the recorded video of Miller's statement that he provided to law enforcement the night he was arrested. In this statement, Miller said Appellant was with him at Wendy's and committed the robbery. Miller testified for the defense, however, at trial. In his trial testimony he claimed Appellant was not with him at Wendy's and he refused to provide the name of the individual that was with him. After being impeached with his prior statement to law enforcement, Miller stood by his trial testimony and maintained Appellant was not the person who committed the robbery.

{¶7} Appellant was ultimately convicted of the robbery charge and the trial court sentenced Appellant to a thirty-six-month prison term. The trial court also sentenced Appellant to an eighteen-month prison term on the community control violation and ordered it to be served consecutively to the prison term imposed on the robbery charge, for an aggregate sentence of fifty-four months. These matters were disposed of by separate judgment entries in separate cases. Appellant has timely appealed both cases, which have been consolidated for purposes of appeal, and raises five assignments of error for our review.

ASSIGNMENTS OF ERROR

I.      "Prosecutorial Misconduct occurred during the cross examination of
        Appellant's witness Michael Miller."

II.     "The Trial Court abused its discretion in instructing witness Miller regarding perjury in the presence of the jury."

III.    "Appellant's conviction for Felony 3 Robbery was against the manifest weight and sufficiency of the evidence."

IV.    "The Trial Court abused its discretion in sentencing Appellant to the maximum time allowed by law in the instant case."

V.     "Counsel for Appellant was ineffective when he failed to request a jury instruction regarding eyewitness identification."

ASSIGNMENTS OF ERROR I and II

{¶8} Because Appellant's first and second assignments of error are interrelated, we address them in conjunction with one another for ease of analysis. In his first assignment of error, Appellant contends that prosecutorial misconduct occurred during the cross-examination of his witness and co-defendant, Michael Miller. More specifically, Appellant argues the prosecutor committed misconduct by threatening Appellant's witness with perjury in the presence of the jury. In his second assignment of error, Appellant further contends the trial court abused its discretion in instructing Miller regarding perjury in the presence of the jury.

{¶9} "The test for prosecutorial misconduct is whether the conduct was improper and, if so, whether the rights of the accused were materially prejudiced." *State v. Leonard*, 4th Dist. Athens No. 08CA24, 2009-Ohio-6191, ¶ 36, citing *State v. Smith*, 97 Ohio St.3d 367, 2002-Ohio-6659, 780 N.E.2d 221, ¶ 45. "The 'conduct of a prosecuting attorney during trial cannot be grounds for error unless

the conduct deprives the defendant of a fair trial.' " *Id.*, quoting *State v. Givens*, 4th Dist. No. 07CA19, 2008-Ohio-1202, ¶ 28, in turn quoting *State v. Gest*, 108 Ohio App.3d 248, 257, 670 N.E.2d 536 (8th Dist.1995).  "Prosecutorial misconduct constitutes reversible error only in rare instances."  *State v. Edgington*, 4th Dist. Ross No. 05CA2866, 2006-Ohio-3712, ¶ 18, citing *State v. Keenan*, 66 Ohio St.3d 402, 405, 613 N.E.2d 203 (1993).  "The 'touchstone of analysis * * * is the fairness of the trial, not the culpability of the prosecutor. * * * The Constitution does not guarantee an "error free, perfect trial." ' " (Alterations sic.) *Leonard* at ¶ 36, quoting *Gest* at 257.

{¶10} We initially address the State's contention that defense counsel entered a general objection to the prosecutor's question but failed to specifically object on grounds of prosecutorial misconduct.  Evid.R. 103 provides, in pertinent part, as follows:

> (A) Effect of Erroneous Ruling.  Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and
>
> (1) Objection.  In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context[.]

Here, the record reveals that defense counsel made a general objection when the prosecutor asked Appellant if he knew the definition of perjury, but he did not specifically allege grounds of prosecutorial misconduct. However, this was not a situation where the admission or exclusion of evidence was at stake. Rather, defense counsel was objecting to a question posed by the prosecutor that was likely unanticipated and, as will be discussed below, was clearly improper. Under these circumstances, we believe the specific grounds of the objection were apparent at the time. Thus, we conclude this error was properly preserved for review.

{¶11} We now turn to the merits of Appellant's argument. As set forth above, midway through the State's cross-examination of Appellant's witness, Michael Miller, and after receiving numerous "I don't know" and "I don't remember" answers, the prosecutor abruptly asked Miller if he knew the definition of perjury. When Miller stated that he did not, the prosecutor asked the trial court to instruct the witness on the definition of perjury. The trial court obliged, over a second objection by defense counsel. Both parties cite to *State v. Halley*, 93 Ohio App.3d 71, 637 N.E.2d 937 (1994) regarding the prosecutor's and trial court's remarks regarding perjury in the presence of the jury. In *Halley*, the court explained at 79 as follows:

> Ordinarily, accusations or reminders of perjury by a prosecutor are
>
> improper. Such statements function as backhanded impeachment as

well as attempted witness intimidation and express the prosecutor's personal belief or opinion as to the credibility of the witness, which is improper. See *State v. Thayer* (1931), 124 Ohio St.1, 176 N.E. 656; *State v. Smith* (1984), 14 Ohio St.3d 13, 14 OBR 317, 470 N.E.2d 883; and DR 7-106(C)(4) of the Code of Professional Responsibility. Due to the prosecutor's role as representative of the state, it is important to avoid any such impropriety so that the stature of the office of the prosecuting attorney does not lend credence or distrust to the testimony of either party's witnesses. Even if the prosecutor is aware of a witness's falsity, unless the prosecutor chooses to testify, it is improper to imply the witness is a perjurer. A correct method of impeachment would be the presentation of a rebuttal witness and, during closing arguments, drawing the jury's attention to the inconsistency in the testimony. The jury may then perform its rightful function and determine credibility.

*Halley* further explains that:

Intimidation of a witness by accusations or insinuations of perjury is improper if done by either the court or the prosecutor. While it may not be improper for the court or even a prosecutor to warn a witness of the penalties of perjury and his right against self-incrimination out of

the hearing of the jury, it should ordinarily not be done in the presence of the jury. Furthermore, when the warning reaches the level of intimidation and interferes with a defendant's right to present witnesses, reversible error occurs. See *Webb v. Texas* (1972), 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330; *State v. Dumaine* (1989), 162 Ariz. 392, 783 P.2d 1184.

{¶12} Applying the reasoning set forth in *Halley*, which we find instructive, the prosecutor's remarks and the instruction provided by the trial court were clearly erroneous. As such, we conclude Appellant has demonstrated the first prong of the test for prosecutorial misconduct. The second prong of the test requires Appellant to demonstrate that his rights were materially prejudiced to the extent he was deprived of a fair trial. Reversible error only occurs when both prongs of the test are met. Thus, the improper conduct at issue here may not rise to the level of prosecutorial misconduct or constitute reversible error if no prejudice resulted.

{¶13} Here, as in *Halley*, although the prosecutor's statements were improper, it does not appear the comments by either the prosecutor or the trial court intimidated the witness. Despite Appellant's argument to the contrary, Miller continued to testify after the improper warning of perjury. Further, a video of his prior statement to law enforcement was played for the jury and resulted in Miller

being impeached with his prior inconsistent statement, which clearly stated Appellant was with him during the incident at Wendy's on the night in question. Nevertheless, when cross-examination continued after the video was played, Miller stood by his trial testimony, claiming his prior statement was false. Based upon this record, we find no evidence of witness intimidation.

{¶14} Moreover, as discussed under Appellant's third assignment of error, we have concluded that Appellant's conviction was supported by sufficient evidence and was not against the manifest weight of the evidence. Thus, the jury would have found Appellant guilty, beyond a reasonable doubt, absent these errors. See *Halley* at 943. Because Appellant has failed to demonstrate the outcome of his trial would have been different but for the prosecutor's statements, or the trial court's instruction, we cannot conclude he was materially prejudiced or deprived of a fair trial. Accordingly, we find no reversible error.

{¶15} In reaching our decision, we reject the State's argument that the errors by the prosecution and the trial court constituted invited error. Under the invited error doctrine, "a party is not entitled to take advantage of an error that he himself invited or induced." *State v. Doss*, 8th Dist. Cuyahoga No. 84433, 2005-Ohio-775, 2005 WL 433531, ¶ 5, quoting *State ex rel. Kline v. Carroll*, 96 Ohio St.3d 404, 2002-Ohio-4849, 775 N.E.2d 517, ¶ 27; *State ex rel. the V. Cos. v. Marshall*, 81 Ohio St.3d 467, 471, 692 N.E.2d 198 (1998). The doctrine precludes a defendant

from making "an affirmative and apparent strategic decision at trial" and then complaining on appeal that the result of that decision constitutes reversible error. *Doss* at ¶ 7, quoting *United States v. Jernigan*, 341 F.3d 1273, 1290 (11th Cir. 2003). The doctrine applies when defense counsel is "actively responsible" for the trial court's error. *State v. Campbell*, 90 Ohio St.3d 320, 324, 738 N.E.2d 1178 (2000).

{¶16} The State argues that when the issue of perjury arose, "defense counsel could have easily asked to approach the bench and had a discussion out of the jury's presence." In making this argument, the State suggests that "defense counsel did not give the trial court the opportunity to consider the matter at a bench conference" and thus the trial court "proceeded to give simple instructions to the witness, albeit in the presence of the jury." After reviewing the entire trial transcript, we find this is a specious argument. The record does not support an argument that defense counsel invited these errors. Instead, defense counsel properly objected to each error as it occurred. It was the prosecution that initially erred, and then invited the trial court to err as well. This argument has no merit.

{¶17} Nevertheless, we find Appellant's arguments raised under both his first and second assignments of error are without merit. Accordingly, they are both overruled.

ASSIGNMENT OF ERROR III

{¶18} In his third assignment of error, Appellant contends his conviction for third-degree felony robbery was against the manifest weight of the evidence and is not supported by sufficient evidence. Appellant primarily contends "that there was no force or threat of force used in the commission of the cash drawer theft" and, as such, his alleged actions "merely constituted theft as opposed to robbery." He argues that the evidence introduced at trial indicated he poked the cashier, Robert Madden, but there was no evidence indicating he made any verbal threats to him. Thus, it is Appellant's position that the State failed to prove the element of force.

{¶19} "When an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily includes a finding that sufficient evidence supports the conviction." *State v. Puckett*, 191 Ohio App.3d 747, 2010–Ohio–6597, 947 N.E.2d 730, ¶ 34, citing *State v. Pollitt*, 4th Dist. Scioto No. 08CA3263, 2010–Ohio–2556, ¶ 15. " 'Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.' " *Puckett* at ¶ 34, quoting *State v. Lombardi*, 9th Dist. Summit No. 22435, 2005–Ohio–4942, ¶ 9, in turn quoting *State v. Roberts*, 9th Dist. Lorain No. 96CA006462, 1997 WL 600669 (Sept. 17, 1997). Therefore, we first consider whether Appellant's convictions were against the manifest weight of the evidence.

{¶20} "In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Brown*, 4th Dist. Athens No. 09CA3, 2009–Ohio–5390, ¶ 24, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541. A reviewing court "may not reverse a conviction when there is substantial evidence upon which the trial court could reasonably conclude that all elements of the offense have been proven beyond a reasonable doubt." *State v. Johnson*, 58 Ohio St.3d 40, 42, 567 N.E.2d 266 (1991), citing *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304, paragraph two of the syllabus (1988).

{¶21} Even in acting as a thirteenth juror we must still remember that the weight to be given evidence and the credibility to be afforded testimony are issues to be determined by the trier of fact. *State v. Frazier*, 73 Ohio St.3d 323, 339, 652 N.E.2d 1000, citing *State v. Grant*, 67 Ohio St.3d 465, 477, 620 N.E.2d 50. The fact finder "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984) (per curiam). Thus, we will only interfere if the fact finder

clearly lost its way and created a manifest miscarriage of justice. Moreover, "[t]o reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." *Thompkins* at paragraph four of the syllabus, construing and applying Section 3(B)(3), Article IV of the Ohio Constitution.

{¶22} Here, Appellant was convicted of robbery in violation of R.C. 2911.02(A)(3), which provides that:

> (A)  No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
>
> * * *
>
> (3)  Use or threaten the immediate use of force against another.

In his brief, he contends the evidence introduced at trial supported a conviction for theft, but not robbery by force, based upon an argument that no force was used in the commission of the crime.

{¶23} Thus, Appellant's argument under this assignment of error appears to be limited to the question of whether the State proved, beyond a reasonable doubt, the element of force contained in R.C. 2911.02(A)(2), which prohibits robbery by force, or force robbery. "Force" is defined in R.C. 2901.01(A)(1) as "any violence,

compulsion, or constraint physically exerted by any means upon or against a person or thing."  "The test for force or threat of force is objective and relies on the totality of the circumstances."  *In re Burton*, 160 Ohio App.3d 750, 2005-Ohio-2210, 828 N.E.2d 719, ¶ 7, citing *State v. Bush*, 119 Ohio App.3d 146, 150, 694 N.E.2d 984 (1997); *State v. Habtemariam*, 103 Ohio App.3d 425, 429, 659 N.E.2d 850 (1995).  "The force element of the offense of robbery is satisfied 'if the fear of the alleged victim was of such a nature as in reason and common experience is likely to induce a person to part with property against his will and temporarily suspend his power to exercise his will by virtue of the influence of the terror impressed.' "  *In re  Burton* at ¶ 7, quoting *State v. Davis*, 6 Ohio St.3d 91, 451 N.E.2d 772, paragraph one of the syllabus (1983); *State v. Mitchell*, 2nd Dist. Montgomery No. 19216, 2004-Ohio-1311, ¶ 14.

{¶24} As further explained in *Burton*, the threat of violence, compulsion, or constraint need not be direct and explicit, but rather it may be implied from the perpetrator's demeanor and tone of voice.  *In re Burton* at ¶ 7, citing *Bush* at 150.  Moreover, the question of whether the actions and demeanor of a perpetrator constituted a threat of immediate use of force against another is a jury question. *State v. Davis*, *supra*, at 94 (where a perpetrator demanded money from a store attendant and then physically removed money while carrying his right hand under

his shirt as if holding a concealed weapon, and while stating "I'm not gonna hurt you").

{¶25} As noted in *State v. Bush*, the test for force is objective and, as a result, when it is possible for a jury to reasonably conclude that a defendant's statements, actions and demeanor had the purpose and effect of causing fear or apprehension, it is not necessary to demonstrate proof of the victim's fear or apprehension in order to establish the force element. *Bush* at 152. The *Bush* court further explained as follows regarding the victim's state of mind regarding the establishment of the force element:

Although proof of the victim's fear and apprehension is not always necessary, the victim's subjective state of mind is relevant in determining whether the objective test has been satisfied. In other words, the victim's state of mind is relevant in determining whether a reasonable person would have thought that the defendant was threatening the use of force. Furthermore, although proof of the victim's fear and apprehension is not required in every case, proof of the victim's fear and apprehension may be essential to prove that the defendant's actions conveyed a threat of force when it is questionable whether the defendant's demeanor, actions, and statements had that purpose and effect. *Id.*

{¶26} Here, a review of the trial transcript indicates that the victim, Robert Madden, was working at the cash register at approximately 9:00 p.m. when two men entered the restaurant. One man, later identified as Appellant, went to the bathroom and the other man, later identified as Michael Miller, stood in the lobby. Miller eventually approached the counter and placed an order. The surveillance video reveals that as Madden was completing the order, Appellant opened the door next to the cash register, walked into an employee-only area behind the counter, and then proceeded to take money out of the cash register and leave with Miller. Although there was no sound on the surveillance video, Madden testified that when Appellant entered the employee-only area, he repeatedly poked him in the side with something and repeatedly told him not to try anything. After taking the money from the cash register, Appellant ordered Madden to get down on his knees and put his head against the wall. Appellant then exited and left the premises.

{¶27} Madden testified that he believed Appellant was poking him with his left hand, and that he could not see Appellant's right hand. Madden testified that he felt threatened and was scared. He testified that he was not sure whether Appellant had a weapon or not, but he could only assume that he did based upon the fact Appellant kept telling him not to try anything. He further testified that when Appellant ordered him to get on his knees and put his head against the wall, he complied because he didn't want to take any chances. He testified that he was

afraid of what Appellant would have done had he tried to interfere, and that he would not have let him take the money in the cash register if he hadn't felt threatened.

{¶28} Another employee, Daniel Collins, testified at trial. Collins was working the drive-thru when the incident occurred. He testified that although he could not identify Appellant specifically, he observed a perpetrator walk through the door by the cash register where Madden was working. He testified that Appellant had his right hand in his coat pocket and that it looked like he was holding something. He informed the restaurant manager over his headset that Madden was being robbed. The 911 call was also played for the jury. Kim Mercer, the shift manager, placed the call and reported that the perpetrator came behind the counter and had his hand underneath his hoody and that it looked like he had a weapon. Regina Maynard, the Wendy's district manager, also testified at trial. She testified that she came to the restaurant after the incident. She testified that Madden's lips were shaking and that he couldn't talk right. She testified that Madden was "truly devastated" and that his condition that night made her cry.

{¶29} Appellant compares the events here to *State v. Frunza*, 8th Dist. Cuyahoga No. 82053, 2003-Ohio-4809, where it was held that pushing a stroller over the toes and into the leg of store employee who was blocking an exit could not reasonably be construed as an attempt to inflict physical harm. However, the

present case does not involve an allegation of physical harm robbery, but rather robbery by force. Appellant also argues that the present case is similar to *State v. Cohen*, 60 Ohio App.2d 182, 396 N.E.2d 235 (1978), where it was held that force was not proven where two individuals approached a sleeping man on the steps of the courthouse, rolled him over, and took his watch and wallet while the man remained asleep and suffered no injuries. However, we find the facts of *Cohen* distinguishable, considering the victim there was asleep during the incident and thus could not have felt threatened or experienced fear. Appellant further urges this Court to rely on *State v. Furlow*, 80 Ohio App.3d 146, 608 N.E.2d 1112 (1992), which held that the force element of robbery requires a showing of actual or potential harm to a person. In *Furlow*, it was held that evidence demonstrating the defendant took a wallet and bills from the "firmer than usual grip" of the victim was insufficient to establish the element of force.

{¶30} However, we find all of these cases to be factually distinguishable from the case presently before us. Here, Appellant entered an employee-only area without permission, poked an employee and told him not to try anything, stole money from the cash register, and then ordered the employee to the ground. The evidence introduced at trial indicated the employee complied out of fear, as well as the assumption that Appellant had a weapon based upon the verbal threats he was making. Another employee who was working that night who witnessed the events

testified Appellant's hand was in his pocket and it looked he was holding something. This fact pattern is far different from the facts in *Frunza*, *Cohen* or *Furlow*. Further, in *State v. Eblin*, 4th Dist. Ross Nos. 888 and 894, 1982 WL 3459, *1 (June 10, 1982), this Court upheld a conviction for robbery by force where a defendant ran up behind a victim and snatched her purse and umbrella and ran off. Based upon evidence in the record that the purse was "jerked" from the victim's hand, causing the her to feel "shocked" and "frightened," we found that *Cohen* was inapplicable and that the jury was entitled to find force was used against the victim. *Id.* at *2.

{¶31} Additionally, in *State v. D'Souza*, 4th Dist. Scioto No. 13CA3586, 2014-Ohio-5650, ¶ 27, albeit a case involving aggravated robbery rather than robbery by force, this Court explained as follows:

> When determining whether a defendant possessed a deadly weapon, the factfinder "is entitled to draw all reasonable inferences from the evidence presented." *State v. Vonderberg*, 61 Ohio St.2d 285, 401 N.E.2d 437 (1980), syllabus. The state need not prove that the defendant "had actually displayed the weapon in order to establish that he had possessed one." *State v. Knight*, 2nd Dist. Greene No.2003CA14, 2004–Ohio–1941, ¶ 17. Additionally, the state need not produce the weapon in order to secure an aggravated robbery

conviction. *Vondenberg*, 61 Ohio St.2d at 288–89. Instead, "the

factfinder may infer that the defendant possessed a deadly weapon

based on his words and conduct." *Knight* at ¶ 18. This does not

mean, however, that the state must prove that the defendant made a

verbal threat indicating the presence of a deadly weapon. *Id.* at ¶ 19.

Additionally, we observe that a victim need not "be '100 percent'

certain that [an] unseen object is a gun." *State v. Watkins*, 8th Dist.

Cuyahoga No. 84288, 2004–Ohio–6908, ¶ 23.

{¶32} In *D'Souza*, we upheld a conviction for aggravated robbery and

actually rejected an argument that the evidence only supported a conviction for

robbery by force where a man entered a bank with his left hand inside his

sweatshirt sleeve and demanded money. *D'Souza* at ¶ 27. In reaching our

decision, we relied in part upon the bank teller's testimony explaining that she

thought the defendant possessed a deadly weapon because he "indicated" that he

had one, and that his "actions and body language caused her to believe that he

possessed a gun and made her fear for her life and the safety of others," despite the

fact that the defendant never stated he had a weapon and no one actually saw a

weapon. *Id.* at ¶ 44. The *D'Souza* court further explained as follows in ¶ 41:

R.C. 2911.02(A)(3) proscribes committing a theft offense by using or

threatening the immediate use of force against another. If an offender

displays, brandishes, indicates that the offender possesses a deadly

weapon, or uses a deadly weapon, then the offender also implicitly

uses or threatens the immediate use of force.

{¶33} Moreover, the Supreme Court of Ohio, in *State v. Davis*, *supra*,

observed that "virtually every American Jurisdiction addressing the issue has held

that robbery convictions can be sustained by evidence that the offender simulated a

gun by putting his hand in a pocket, in a bag, or under a shirt." *Davis* at 94, citing

81 A.L.R.3d 1006, annotation (1977); see also *State v. Holliday*, 6th Dist. Lucas

No. L-15-1264, 2017-Ohio-2581 (upholding a conviction for physical harm

robbery where a store employee observed a perpetrator's hand in his pocket "like

he had a gun," while the perpetrator asked the employee "to do him a favor and

open the drawer and give him all the money inside.").[1]  Based upon the record

before us, we believe the evidence introduced by the State at trial established the

element of force beyond a reasonable doubt.

{¶34} As we have already explained, the weight to be given evidence and

the credibility to be afforded testimony are issues to be determined by the trier of

fact. *State v. Frazier*, *supra*, at 339, citing *State v. Grant*, at 477.  The jury, as the

trier of fact, is free to accept or to reject any and all of the evidence and to assess

---

[1] Based on the rationale of *Holliday*, the facts sub judice arguably would have supported a charge of physical harm robbery as opposed to robbery by force (which was charged), rather than simple theft, as argued by Appellant.

witness credibility. Further, a verdict is not against the manifest weight of the evidence simply because the fact-finder opts to believe the State's witnesses. *State v. Brooks*, 4th Dist. Ross No. 15CA3490, 2016-Ohio-3003, ¶ 32, citing, e.g., *State v. Chancey*, 4th Dist. Washington No. 15CA17, 2015-Ohio-5585, ¶ 36, citing *State v. Wilson*, 9th Dist. Lorain No. 12CA010263, 2014-Ohio-3182, ¶ 24, citing *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16. A fact-finder is free to believe all, part, or none of a witness's testimony. *Brooks* at ¶ 32, citing *State v. Scott*, 4th Dist. Washington No. 15CA2, 2015-Ohio-4170, ¶ 25; *State v. Jenkins*, 4th Dist. Ross No. 13CA3413, 2014-Ohio-3123, ¶ 37. Thus, in the case sub judice, the jury, after hearing and observing the witnesses, obviously found the testimony of the State's witnesses credible. "It is not our job to second-guess the jury where there is evidence from which it could reach a guilty verdict; we must defer to the jury's credibility and weight determinations." *State v. Burris*, 4th Dist. Athens No. 16CA7, 2017-Ohio-454, ¶ 31. Furthermore, we cannot conclude this is an " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins*, *supra*, at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983).

{¶35} As such, after reviewing the entire record, we cannot say that the jury lost its way or created a manifest miscarriage of justice when it found Appellant guilty of robbery by force. Accordingly, we find that Appellant's conviction was

not against the manifest weight of the evidence. Thus, we necessarily also conclude that sufficient evidence supports his conviction. We therefore overrule Appellant's third assignment of error.

## ASSIGNMENT OF ERROR IV

{¶36} In his fourth assignment of error, Appellant contends the trial court abused its discretion in sentencing Appellant to the maximum time allowed by law. More specifically, Appellant argues that the trial court's imposition of a maximum sentence amounted to a "trial tax" where there were no other significant aggravating factors aside from his decision to exercise his right to a trial by jury. Appellant further suggests the trial court erred by failing to state its reasons in support of its findings with regard to the imposition of a maximum sentence. The State contends the record clearly rebuts Appellant's claim that the sentence was a trial tax.

{¶37} We initially note that Appellant's argument that the trial court abused its discretion is misplaced. Abuse of discretion is no longer the appropriate standard of review when reviewing the imposition of felony sentences. When reviewing felony sentences, we apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Brewer*, 2014–Ohio–1903, 11 N.E.3d 317, ¶ 33 (4th Dist.) ("we join the growing number of appellate districts that have abandoned the *Kalish* plurality's second step abuse-of-discretion standard of review; when the General

Assembly re-enacted R.C. 2953.08(G)(2), it expressly stated '[t]he appellate court's standard of review is not whether the sentencing court abused its discretion"); see also *State v. Graham*, 4th Dist. Highland No. 13CA11, 2014–Ohio–3149, ¶ 31. R.C. 2953.08(G)(2) specifies that an appellate court may increase, reduce, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly finds either that "the record does not support the sentencing court's findings" under the specified statutory provisions or "the sentence is otherwise contrary to law."

{¶38} Here, the record indicates Appellant was sentenced to a thirty-six-month term of imprisonment for third-degree robbery by force, as well as an additional eighteen-month term of imprisonment for a community control violation, to be served consecutively for an aggregate prison term of fifty four months. It appears that the sentence Appellant received on the robbery conviction was within the statutory range and that eighteen months was the correct length of time remaining for the underlying offense related to Appellant's community control violation. Thus, it cannot be said that the length of either sentence is contrary to law. Further, and importantly, maximum sentences do not require specific findings. *State v. McClain*, 4th Dist. Pickaway No. 13CA17, 2014–Ohio–4192, ¶ 36; *State v. Lister*, 4th Dist. Pickaway No. 13CA15, 2014–Ohio–1405, ¶ 10, citing *State v. White*, 2013–Ohio–4225, 997 N.E.2d 629, ¶ 7 (1st Dist.).

Although trial courts have full discretion to impose any term of imprisonment within the statutory range, they must consider the sentencing purposes in R.C. 2929.11 and the guidelines contained in R.C. 2929.12. *Lister*, *supra*, at ¶ 14. H.B. 86 amended R.C. 2929.11 and states:

> (A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.

R.C. 2929.12 also provides a non-exhaustive list of factors a trial court must consider when determining the seriousness of the offense and the likelihood that the offender will commit future offenses. *Lister*, *supra*, at ¶ 15.

{¶39} While the trial court is required to consider the R.C. 2929.12 factors, "the court is not required to 'use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness

and recidivism factors (of R.C. 2929.12.)' " *State v. Latimer*, 11th Dist. Portage No. 2011–P–0089, 2012–Ohio–3745, ¶ 18, quoting *State v. Webb*, 11th Dist. Lake No. 2003–L–078, 2004–Ohio–4198, ¶ 10, quoting *State v. Arnett*, 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000).  The Supreme Court of Ohio in *State v. Adams*, 37 Ohio St.3d 295, 525 N.E.2d 1361 (1988), has held: "[a] silent record raises the presumption that a trial court considered the factors contained in R.C. 2929.12." *Latimer*, *supra,* quoting *Adams* at paragraph three of the syllabus.  Further, "[a] maximum sentence is not contrary to law when it is within the statutory range and the trial court considered the statutory principles and purposes of sentencing as well as the statutory seriousness and recidivism factors." *State v. Talley*, 2016-Ohio-8010, 74 N.E.3d 868, ¶ 15 (2d Dist.).

{¶40} A review of the record reveals that although the trial court did not specifically state its reasons for imposing maximum sentences on all counts, it expressly stated its consideration of the required principles and purposes of felony sentences.  For instance, in addition to enumerating the applicable sentencing statutes and factors, the trial court stated that given the fact the robbery was committed while Appellant was on community control as well as the fact Appellant had a prior felony conviction, any presumption against prison time was rebutted.  Based on the foregoing, it is clear that the trial court appropriately considered the principles and purposes of felony sentences, as set forth in R.C.

2929.11, including the seriousness and recidivism factors contained in R.C. 2929.12. Thus, we cannot conclude the trial court's imposition of maximum sentences on all counts was not supported by the record or was clearly and convincingly contrary to law.

{¶41} Further, although Appellant does not specifically challenge the trial court's imposition of consecutive sentences, because Appellant argues the trial court erred in imposing the maximum possible sentence on all counts, which necessarily required the sentences be imposed consecutively, we will review the trial court's imposition of consecutive sentences as well. "[I]n order to impose consecutive terms of imprisonment, a trial court is required to make findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.3d 659, ¶ 29. A failure to make the findings required by R.C. 2929.14(C)(4) renders a consecutive sentence contrary to law. *State v. Bever*, 4th Dist. Washington No. 13CA21, 2014-Ohio-600, ¶ 17; *State v. Stamper*, 12th Dist. Butler No. CA2012–08–166, 2013–Ohio–5669, ¶ 23. Specifically, the sentencing court must find that: (1) "the consecutive sentence is necessary to protect the public from future crime or to punish the offender"; (2) "the consecutive sentences are not

disproportionate to the seriousness of the offender's conduct and to the danger the

offender poses to the public"; and (3) one of the following:

(a) The offender committed one or more of the multiple offenses

while the offender was awaiting trial or sentencing, was under a

sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of

the Revised Code, or was under post-release control for a prior

offense.

(b) At least two of the multiple offenses were committed as part of

one or more courses of conduct, and the harm caused by two or more

of the multiple offenses so committed was so great or unusual that no

single prison term for any of the offenses committed as part of any of

the courses of conduct adequately reflects the seriousness of the

offender's conduct.

(c) The offender's history of criminal conduct demonstrates that

consecutive sentences are necessary to protect the public from future

crime by the offender.

{¶42} A review of the record before us reveals that the trial court made the

required findings before imposing consecutive sentences, and the findings made

are supported by the record.  For example, the trial court expressly found, pursuant

to R.C. 2929.14(C), that consecutive sentences 1) were necessary to protect the

public from future crime; 2) were necessary to punish the offender and 3) were not disproportionate to the conduct or danger posed by the offender. The Court also found that the offense was committed while Appellant was serving a period of community control. With regard to Appellant's community control violation, the trial court specifically noted that not only had Appellant failed to report for a period of one year, the basis of the community control violation was the commission of a new felony. Thus, we find the trial court's imposition of consecutive sentences pursuant to R.C. 2929.14 is supported by the record and was not clearly and convincingly contrary to law.

{¶43} Further, with respect to Appellant's argument that the trial court's imposition of the maximum possible sentence amounted to a "trial tax," we note that "[i]t is axiomatic that 'a defendant is guaranteed the right to a trial and should never be punished for exercising that right.' " *State v. Morris*, 159 Ohio App.3d 775, 2005-Ohio-962, 825 N.E.2d 637, ¶ 12, quoting *State v. O'Dell*, 45 Ohio St.3d 140, 543 N.E.2d 1220, paragraph two of the syllabus (1989). As we further observed in *Morris* at ¶ 12-13:

> Any increase in the sentence based upon the defendant's decision to stand on his right to put the government to its proof rather than plead guilty is improper. *State v. Scalf* (1998), 126 Ohio App.3d 614, 621, 710 N.E.2d 1206; *Columbus v. Bee* (1979), 67 Ohio App.2d 65, 77, 21

O.O.3d 371, 425 N.E.2d 409. If courts could punish defendants for exercising their constitutional right to a jury trial, the right would be impaired by the chilling effect. *Scalf* at 621, 710 N.E.2d 1206; see, also *North Carolina v. Pearce* (1969), 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656. This prohibition on increased punishment applies "no matter how overwhelming the evidence of [defendant's] guilt." *Scalf* at 621, 710 N.E.2d 1206, quoting *United States v. Derrick* (C.A.6, 1975), 519 F.2d 1, 3.

In addition, a court must avoid creating the appearance that it enhanced a defendant's sentence because he elected to go to trial. *Scalf*, 126 Ohio App.3d at 621, 710 N.E.2d 1206; *United States v. Hutchings* (C.A.2, 1985), 757 F.2d 11, 14; *United States v. Stockwell* (C.A.9, 1973), 472 F.2d 1186, 1187. When the court makes statements that "give rise to the inference that [the] defendant may have been punished more severely because of his assertion of the right to trial by jury," we must vacate the sentence (*State v. Hobbs*, Cuyahoga App. No. 81533, 2003-Ohio-4338, 2003 WL 21954778, at ¶ 71), unless the record also contains an unequivocal statement that the defendant's decision to go to trial was not considered in imposing the sentence. *Scalf*, 126 Ohio App.3d at 621, 710 N.E.2d 1206, citing

*Hutchings, supra.* "Absent such an unequivocal statement, the sentence will be reversed and the matter remanded for resentencing." *Id.*; *United States v. Medina–Cervantes* (C.A.9, 1982), 690 F.2d 715, 716–717.

In *Morris*, the appellant pointed to numerous statements made by the trial judge indicating anger and frustration that the case was taken to trial, coupled with the lack of an unequivocal statement that the decision to go to trial was not considered in imposing sentence. *Id.* at ¶ 14.

{¶44} Here, Appellant points to no statements whatsoever made by the trial court indicating disappointment, frustration or anger that Appellant elected to go to trial. This omission coupled with our determination that Appellant's sentences were supported by the record and not contrary to law lead us to conclude the trial court's imposition of the maximum possible sentence did not constitute an impermissible trial tax. Thus, having found no error in the trial court's imposition of maximum and consecutive sentences. We overrule Appellant's fourth assignment of error.

## ASSIGNMENT OF ERROR V

{¶45} In his fifth assignment of error, Appellant contends his trial counsel was ineffective for failing to request a jury instruction regarding eye witness identification. To prevail on a claim of ineffective assistance of counsel, a criminal

appellant must establish (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Knauff*, 4th Dist. Adams No. 13CA976, 2014-Ohio-308, ¶ 23. In Ohio a properly licensed attorney is presumed competent. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62. Thus, in reviewing the claim of ineffective assistance of counsel, we must indulge in "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland* at 689, quoting *Michael v. Louisana*, 350 U.S. 91, 101, 76 S. Ct. 158, 100 L. Ed. 83 (1956). Failure to satisfy either part of the test is fatal to the claim. *Id.*; *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989).

{¶46} In *State v. Robinson*, 2nd Dist. Montgomery No. 12000, 1992 WL 15227, *4, the Second District Court of Appeals considered an ineffective assistance of counsel argument based upon the failure to request a jury instruction regarding eyewitness identification. The court observed that the decision

"[w]hether to give a jury instruction on eyewitness identification is a matter commended to the discretion of the trial court." Citing *State v. Guster*, 66 Ohio St.2d 266, 421 N.E.2d 157 (1981). *Guster* held as follows:

> A trial court is not required in all criminal cases to give a jury instruction on eyewitness identification where the identification of the defendant is the crucial issue in the case and is uncorroborated by other evidence. A trial court does not abuse its discretion in deciding that the factual issues do not require, and will not be assisted by, the requested instructions, and that the issue of determining identity beyond a reasonable doubt is adequately covered by other instructions. *Guster* at syllabus.

The *Robinson* Court ultimately decided that a jury instruction on eyewitness identification was unnecessary where the victim testified she observed the defendant at a close distance in a well-lighted area for over an hour, and later picked the defendant out of a photo spread the next day. *Robinson* at *4.

{¶47} More recently, the Ninth District Court of Appeals considered an argument that a trial court committed plain error in not providing a jury instruction regarding eyewitness identification. *See State v. Webb*, 9th Dist. Summit No. 27424, 2015-Ohio-2380, ¶ 26. The *Webb* court declined to find plain error where the trial court gave a general instruction on the issue of credibility, Webb's trial

counsel emphasized the potential issues with identification on cross-examination, and where Webb failed to develop any argument as to how the failure to give such an instruction affected the outcome of the trial. *Id.* at ¶ 27.

{¶48} Here, we conclude Appellant's argument that the jury should have been instructed regarding eyewitness testimony is not supported by the record. Appellant argues that Robert Madden's identification of Appellant was "tenuous at best." He argues Madden's testimony demonstrated "apparent uncertainty" regarding the identification of the perpetrator. Appellant further argues that defense counsel failed to properly cross-examine Madden regarding "the uncertainty previously expressed by [him] regarding the look he got at the suspect." However, the record does not support these arguments.

{¶49} Instead, a review of the record reveals that Robert Madden unequivocally testified that he "got a good look" at both Appellant and his co-defendant, Miller. He testified that Appellant was up close to him and that he maintained eye contact with him during the incident. He further identified Appellant in the courtroom. Appellant argues that Madden's response of "I think so" upon being questioned a second time as to whether he "got a good look at [the] guy that came behind the register" indicated "apparent uncertainty" as to the perpetrator's identification. However, depending on the inflection in Madden's voice, which this Court cannot review, that statement could have been construed as

being a clear yes, rather than an indication of uncertainty. The surveillance footage reveals the restaurant was well-lit at the time of the incident and that Madden would have had a direct and close-up view of the perpetrator's face.

{¶50} Further, and contrary to Appellant's arguments, defense counsel specifically cross-examined Madden regarding his identification of Appellant. Defense counsel cross-examined Madden on the clothing the perpetrator was wearing, whether he was wearing glasses, and whether his hood was up. Defense counsel further questioned Madden regarding what it was that was "so specific about the Defendant today that would make [him] able to identify him." Madden responded that Appellant's facial features, beard, haircut and glasses were all the same. In response to Madden's comment regarding the glasses, defense counsel showed the jury Appellant's booking photo, in which he was not wearing glasses. Thus, the record indicates defense counsel vigorously cross-examined Madden regarding his identification of Appellant as the perpetrator of the robbery.

{¶51} In light of the foregoing trial testimony, there is no support in the record for Appellant's argument that trial counsel should have requested a jury instruction regarding eyewitness identification. Further, counsel's failure to request an instruction that was not warranted based upon the evidence does not constitute ineffective assistance. Thus, we find Appellant's fifth assignment of error has no merit and it is overruled.

{¶52} Accordingly, having found no merit in any of the assignments of error raised by Appellant, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Hess, J.: Concur in Judgment and Opinion.

For the Court,


BY: _____

Jason P. Smith, Presiding Judge

### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**